OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 At issue on this appeal is the propriety of dismissing plaintiff’s complaint as a remedy for misconduct that involved taking and use of the adversary’s privileged documents. In the circumstances presented, we affirm the Appellate Division order upholding dismissal as a proper exercise of the trial court’s discretion under CPLR 3103 (c).
 

 The underlying facts, as found by the Supreme Court and affirmed by the Appellate Division, are essentially undisputed. In February 1988, plaintiff was terminated as Manager of Health Services for American Red Cross in Greater New York, where she had worked for more than two years. Plaintiff thereafter commenced an action for sexual harassment and discrimination pursuant to the Human Rights Law (Executive Law § 290
 
 et seq.)
 
 and 42 USC §§ 1983 and 1985, against
 
 *566
 
 her former supervisor (Robert Bender) and her former employer. She alleged that her refusal of Bender’s unwelcome sexual overtures prevented her advancement at Red Cross, ultimately leading to her termination, and that Red Cross itself allowed an environment hostile to its women employees. Plaintiff was represented by Wisehart & Koch (Arthur Wise-hart), and defendants Bender and Greater New York Red Cross by Weil, Gotshal & Manges (WGM) (Mark Jacoby).
 

 On Friday, June 28, 1991, during the course of increasingly acrimonious pretrial proceedings marked by mutual accusation of abusive tactics, plaintiff and Wisehart appeared at a hearing room in New York County Supreme Court to argue certain deposition issues before a Special Referee. Now employed as a salaried paralegal by her attorney, plaintiff took what she described as her customary place at the conference table. Already on the table at that spot was a stack of some 200 pages, the top sheet beginning:
 

 "Well, Gotshal & Manges
 

 MEMORANDUM
 

 December 8,1989 To: File
 

 From: Lawrence J. Baer
 

 Re:
 
 Joan Lipin v American Red Cross
 
 * * *
 

 Meeting with Mary Stanton 9/15/89”.
 

 The page continued with a summary of counsel’s meeting with Stanton, a Red Cross employee, including Stanton’s candid impressions of plaintiff and her recounting of Jacoby’s legal advice regarding plaintiff’s termination.
 

 While the attorneys — including the author of the file memorandum, WGM associate Lawrence Baer — were absorbed in heated exchanges regarding the deposition, plaintiff read the first few pages, then shifted the documents (which she concealed in a folder) to her lap and continued to read, undetected, for more than an hour. In plaintiff’s own words: "I wasn’t reviewing those papers, I was reading them.” Immediately, she recognized the documents as containing the lawyer’s interview notes of Red Cross personnel, including defendant Bender, as well as deposition digests.
 

 At a break, plaintiff slipped the documents into a Redweld file "for [her] own protection,” determined to retain them as "material evidence,” and in the corridor told Wisehart about the documents and what she had done. Wisehart said that he
 
 *567
 
 would not himself read the documents until he had received a "second opinion.” Plaintiff told Wisehart that she would not give him the documents unless she could keep a copy. During the luncheon recess plaintiff returned to Wisehart’s office where she made three photocopies, "Bates-stamped” them, and — except for one copy she later took home with her— placed the documents in a locked filing cabinet to which she had a key.
 

 According to plaintiff, Wisehart counseled her that if Baer discovered his documents missing, she must tell the truth: that she had picked them up by mistake. Plaintiff responded that she had not picked them up by mistake, but deliberately, and would not return the originals unless asked to do so by WGM. In consultation with the lawyer who had referred plaintiff’s case to him, Wisehart concluded that any claim of privilege as to the documents had been lost as a result of Baer’s careless handling of them, and on Sunday evening, June 30, he read through them.
 

 Promptly the next morning, Wisehart wrote to Jacoby that "a recent development causes me to suggest that immediate attention should be given to the subject of settlement from all points of Anew.” At a meeting the following afternoon, Wise-hart confronted defense counsel with the documents and demanded immediate termination of defendant Bender, a "substantial” money settlement and other reparations. When Jacoby asked how he had obtained the documents, Wisehart demurred, citing attorney-client privilege, asserting only that plaintiff had obtained them legitimately. Wisehart further cautioned Jacoby that plaintiff had retained a copy "for her own protection” and he had no control over what she might do with the information, suggesting that she could release it to the press.
 

 On Wednesday, July 3, 1991, defendants moved for a protective order pursuant to CPLR 3103, and that very day the parties appeared in court. Wisehart consented to WGM’s request for interim relief, including that plaintiff (herself present in the courtroom) turn over to her lawyer "everything in her possession,” and that he secure all copies in his vault. Over the Fourth of July holiday, however, plaintiff hand-cop-led parts of the documents from the set she retained at home, returning the documents to Wisehart on Friday, July 5. Even then, plaintiff kept her handwritten notes, and the documents were placed in the locked cabinet for which she had a key.
 

 
 *568
 
 Following plaintiff’s testimony at a hearing commenced July 8, defendants amended their request for relief to include dismissal of the complaint. Defendants based their request on plaintiff’s testimony establishing her "knowing and purposeful course of conduct to misuse the wrongfully acquired information in a blatant violation of accepted moral, ethical and legal standards, and this Court’s directive.” Her intimate knowledge of these defense documents had caused "irreparable harm” and "forever tainted the conduct of this litigation and * * * severely prejudiced defendants’ ability to defend,” as "neither plaintiff’s memory, nor [Wisehart’s] memory can be purged.” Because the case was now "poisoned,” according to counsel nothing short of dismissal could remedy the wrongdoing.
 

 In connection with a separate discovery dispute, on July 29 Wisehart filed a motion to compel disclosure with the Special Referee. Jacoby alerted the trial court that plaintiff’s memorandum exploited information derived from the disputed documents, contending that this violation of the court’s directive underscored the need for dismissal of the action. He pointed in particular to arguments made by Wisehart that Jacoby said could have come only from the interview notes. Throughout the autumn, the parties litigated plaintiff’s cross motion for disqualification of WGM (on grounds they were fact witnesses in the document dispute, and had conspired in plaintiff’s termination, a tort) and other disclosure controversies.
 

 After reviewing the documents in camera, in January the court dismissed the complaint, rejecting plaintiff’s claim that careless placement of the papers waived their confidential nature. The court found that plaintiff, in retaining the documents and making notes of their contents, had acted contrary to the court’s order, concluding that:
 

 "the actions of the plaintiff and her attorney were so egregious in taking this material that was clearly the attorney’s work product, clearly interviews with the defendant’s employees, clearly not for perusal by any other attorney or litigant in this litigation, so heinous that the only remedy, as much as I dislike to do this, is to dismiss the lawsuit. Otherwise, there is no meaning to privilege, there is no meaning to conduct among attorneys, and there is no rule of law.
 

 "Whatever was in these papers was confidential. That confidentiality was broken. It was repeatedly
 
 *569
 
 broken by both the litigant and the attorney, and cannot be countenanced by the Court. Therefore, I am dismissing the lawsuit in its entirety.”
 
 *
 

 The Appellate Division sustained the trial court’s exercise of discretion, agreeing that plaintiffs own egregious conduct warranted the drastic sanction of dismissal. The highly improper manner in which plaintiff obtained the documents, coupled with their subsequent use, in the court’s view constituted sufficient basis for dismissal. Having ourselves reviewed the documents in camera, we now affirm.
 

 I
 

 In that plaintiff continues to defend the legitimacy of her behavior, analysis begins with that issue.
 

 The trial court, and the Appellate Division, could hardly have been clearer in their conclusions, characterizing plaintiffs conduct — as well as that of her attorney — as "heinous” and "egregious,” a threat to the attorney-client privilege, to the concept of civilized, orderly conduct among attorneys, and even to the rule of law.
 

 Moreover, there is ample support for the affirmed factual findings of wrongdoing by plaintiff, wholly apart from the conduct of her attorney that indisputably compounded it. Having deliberately taken the initial misstep of secretly reading what she recognized as attorneys’ confidential documents, plaintiff was presented with several opportunities to purge herself and minimize prejudice to defendants. At each juncture, however, she chose the course of action that exacerbated the harm. Having read the documents, she concealed and then took them. Having taken them, she photocopied them, kept them accessible at the office, and insisted on retaining a set for herself at home. Upon being ordered by the court to return "everything in her possession,” she made notes of the documents and, even after surrendering the final copy, held onto the notes. And although plaintiff was present when the trial court instructed Wisehart to secure the documents in his
 
 *570
 
 "vault,” she placed them in a cabinet to which she had free access.
 

 While the Appellate Division made plain that it would reach the same result whether or not the documents were actually privileged, in fact both courts agreed as to the protected nature of the documents, which plainly fall within the ambit of work product and the attorney-client privilege
 
 (see,
 
 CPLR 3101 [b], [c];
 
 see also, Spectrum Sys. Intl. Corp. v Chemical Bank,
 
 78 NY2d 371, 377, 380). Similarly lacking any basis in the record — as the trial court and Appellate Division further concluded — is plaintiff’s claim that defendants waived the privilege by leaving the documents on the hearing room table during argument before the Special Referee.
 

 There can be no doubt that plaintiff’s conduct was — to say the least — a breach of the orderly disclosure scheme set forth in CPLR article 31. The question remains whether a proper response to that breach was outright dismissal of the complaint.
 

 II
 

 Plaintiff challenges dismissal of her complaint as both beyond the trial court’s power and an abuse of discretion. Neither contention withstands analysis.
 

 Turning first to the issue of authority, we note that a good deal of the parties’ argument centers on courts’ inherent power to punish for contumacious conduct — understandably so, in that the trial court and Appellate Division both were concerned with intolerable behavior that, unredressed, threatens the entire litigation process. Whether there is power— inherent or otherwise — to close the courthouse doors to a plaintiff with "unclean hands” is not, however, the issue before us. Relief was sought under CPLR 3103 (c), which was the basis of both courts’ review, as it is of ours.
 

 CPLR 3103 governs the subject of "protective orders” for disclosure abuses, and confers broad discretion upon a court to fashion appropriate remedies both where abuses are threatened (subd [a]) and where they have already occurred (subd M):
 

 "(a) Prevention of abuse. The court may at any time on its own initiative, or on motion of any party or witness, make a protective order denying, limiting, conditioning or regulating the use of any disclosure device. Such order shall be designed to
 
 *571
 
 prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts.
 

 "(b) Suspension of disclosure pending application for protective order. Service of a notice of motion for a protective order shall suspend disclosure of the particular matter in dispute.
 

 "(c) Suppression of information improperly obtained. If any disclosure under this article has been improperly or irregularly obtained so that a substantial right of a party is prejudiced, the court, on motion, may make an appropriate order, including an order that the information be suppressed.”
 

 In seeking relief pursuant to CPLR 3103 (c), defendants alleged that plaintiff had violated their attorney-client privilege, and that her extensive knowledge of the contents of their private documents impaired the conduct of the defense.
 

 There being no specific mention of dismissal in CPLR 3103 (c), plaintiff contends that courts lack that power where information is improperly obtained
 
 (contrast,
 
 CPLR 3126 [3], authorizing dismissal as penalty for refusal to comply with order to disclose). We read the statute, however, to confer authority to do exactly what the statute says — that is, to enter
 
 any
 
 order, including an order of dismissal, that is appropriate in the circumstances.
 

 The lack of greater specificity in this statute designed to confer broad discretion is hardly surprising. Spelling out the remedies for the limitless potential discovery abuses would not only overwhelm the statute but also needlessly confine the discretion of courts to tailor the remedy to the problem. The Practice Commentaries to CPLR 3103 recognize that:
 

 "If the recognition of possible abuse [of disclosure devices] were to take the form of special or detailed remedies built into different devices, with each one perhaps listing the possible abuses and attempting to remedy them seriatim, the disclosure article would be seriously encumbered with little resulting advantage. Experience has taught that the variations from case to case are too great and that when an article has as pervasive and important a mission as the disclosure article, the specific approach is unwise.” (Siegel, Practice Com
 
 *572
 
 mentarles, McKinney’s Cons Laws of NY, Book 7B, CPLR C3103:l, at 356;
 
 see also,
 
 3A Weinstein-Korn-Miller, NY Civ Prac 3103.02.)
 

 As the drafters made clear, "[tjhere is no limit but the needs of the parties on the nature of the [protective] order or the conditions of discovery” (First Preliminary Report of Advisory Comm on Practice and Procedure, 1957 NY Legis Doc No. 6 [b], at 124). There being power in the trial courts to dismiss a complaint, the question remains whether in this case the remedy of dismissal was an "appropriate” order, or an abuse of the trial court’s discretion.
 

 CPLR 3103 (c) does provide that "a substantial right of a party [must be] prejudiced” by the improper conduct, focusing attention on the statutory objective of redressing harm or prejudice to the party adversely affected by the conduct. Plainly this is a measure for remediation, not sanction. Obviously, the extreme measure of dismissal — likely the severest remedy that may be visited upon a plaintiff — would require serious prejudice to the affected party, irremediable by less drastic steps, a standard we agree was satisfied here.
 

 Defendants urged dismissal because of assertedly irreparable prejudice to the conduct of their defense as a result of the knowledge plaintiff herself had gained through study, retention and copying of their privileged documents. There is no question that plaintiff knowingly and deliberately intruded herself into plainly private communications between defendants and their attorney, and by retaining and hand-copying the documents preserved the information gleaned for maximum advantage to herself (and maximum disadvantage to defendants) in the litigation. Similarly, there is no question that the information was used to that end. Defense counsel argue that within the first 100 hours after plaintiff obtained the information, it surfaced in "ten separate acts of misbehavior,” which they detail, including attempts to extract a "substantial” money settlement. Plaintiff’s own recognition that the information would yield significant litigation advantage to her, and consequent disadvantage to her adversary, undercuts any suggestion that the documents were immaterial. Plaintiff’s knowledge of course can never be purged.
 

 In these circumstances, we conclude that dismissal was appropriate and not an abuse of the trial court’s discretion as a matter of law
 
 (see, Matter of U. S. Pioneer Elecs. Corp. v Nikko Elec. Corp.,
 
 47 NY2d 914). Clearly neither suppression
 
 *573
 
 of the documents nor suppression of the information was a realistic alternative. Nor would disqualification of plaintiffs counsel have ameliorated the prejudice, in that the wrongdoing and the knowledge were the client’s own, which she would carry into any new attorney-client relationship
 
 (cf., Matter of Weinberg,
 
 129 AD2d 126,
 
 rearg denied
 
 132 AD2d 190,
 
 lv dismissed sub nom. Matter of Beiny,
 
 71 NY2d 994 [attorney disqualification an appropriate remedy where plaintiff was not infected by attorney’s misconduct]). While in
 
 Weinberg
 
 the court felt it sufficient to require the plaintiff to establish, once new counsel was in place, an independent source for any information that may have also been discoverable through the documents improperly obtained by disqualified counsel, the trial court here reasonably concluded that policing such an order in this instance would be inadequate. In reaching that determination, the nature of plaintiffs misconduct could properly be considered, and indeed the trial court emphasized, in concluding that dismissal was the only practicable remedy here, the persistence of plaintiffs misconduct.
 

 Plaintiff’s remaining contentions are without merit.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Judges Simons, Titone, Bellacosa, Smith and Levine concur; Judge Ciparick taking no part.
 

 Order affirmed, with costs.
 

 *
 

 Plaintiff’s counsel thereafter simply recommenced the litigation in the United States District Court for the Southern District of New York, on the theory that — despite the tenor and substance of the trial court’s opinion— the dismissal was not "with prejudice.” That litigation has been stayed, pending determination of the present appeal. Counsel also tried, by subpoena, to obtain a copy of the documents for use on appeal, but this Court granted defendants’ motion to quash.