OPINION OF THE COURT
Vito C. Caruso, J.
Claiming that defense counsel, Roemer & Featherstonhaugh, P. C., engaged in illegal and unethical conduct by altering one of plaintiffs duly executed medical authorizations and sending it to a physician not identified by plaintiff as one of her treating physicians, plaintiff moves pursuant to CPLR 3103 (c) for an order striking defendant’s answer or, in the alternative, suppressing the information wrongfully obtained and disqualifying defense counsel. Defendant cross-moves for an order pursuant to CPLR 3124 compelling plaintiff to provide medical authorizations and medical records for additional, assertedly undisclosed medical providers.
The underlying facts are simple and easily stated. In July *956 1992, plaintiff was involved in an automobile accident with defendant’s decedent. Seeking recovery for lower back, leg and left arm and hand injuries allegedly sustained in the accident, in 1993 she commenced the instant action. During the discovery process, she identified nine health care providers who treated her for the injuries alleged and, pursuant to defendant’s demand, executed and kept copies of nine separate medical authorizations. Each authorization contained the name of a specific provider at the top of the page.
Plaintiff also has a long and complicated history of gynecological problems dating back to the mid-1980’s and was undergoing continued treatment for these problems before, during and after the subject accident. While she had on several isolated occasions experienced lower back and leg pain as a consequence of her gynecological problems, she did not identify her gynecologist, August Schwenk, as a treating physician in connection with this lawsuit. During depositions, it became apparent that defense counsel had somehow obtained Schwenk’s medical records, and this fact prompted an angry investigation by plaintiff into how the records were received. The investigation revealed that the documents were secured by defense counsel sending a copy of a blank authorization (i.e., one that did not name any provider at the top) to Schwenk. Upon receipt and review of this document, plaintiff adamantly denied signing the blank authorization, claimed that the document was a fraudulent alteration and that the improper disclosure obtained by defense counsel as a consequence thereof was highly prejudicial and warranted sanction. These motions ensued.
Like the facts of the case, the applicable legal principles are similarly simple and straightforward. CPLR 3103 (c) provides, "[i]f any disclosure under this article has been improperly or irregularly obtained so that a substantial right of a party is prejudiced, the court, on motion, may make an appropriate order, including an order that the information be suppressed.” Under this authority, the party seeking CPLR 3103 (c) sanctions must show two things: first, that there has in fact been improper or irregularly obtained disclosure and, second, that a substantial right has been prejudiced. Assuming this has been established, the focus then shifts to fashioning an appropriate sanction. In this regard, the Court of Appeals has recently reaffirmed that the courts have wide discretion in this area and can issue any sanction they believe adequately will redress the violation (see, Lipin v Bender, 84 NY2d 562).
*957 In applying the law to the facts of this case, the court finds that the requisite showing set forth above has been established. Sadly, the court has little doubt but that defense counsel engaged in improper conduct. This conclusion is based upon the following findings of fact, namely, that: (1) plaintiff and her attorney vigorously deny preparing or executing any blank authorizations, (2) each of the nine authorizations previously executed were directed to specific providers and not in blank, (3) only defense counsel had a copy of the blank authorization, and no original was produced, (4) counsel was unable to satisfactorily explain how they came into possession of the document and was otherwise unable to produce a demand or a letter wherein they specifically requested an authorization for Dr. Schwenk or, in the alternative, a transmittal letter from plaintiff reflecting that such an authorization was enclosed, and (5) the fact that the blank authorization and the one plaintiff executed in favor of Moses Sommer, M.D., are suspiciously similar in that the plaintiff’s signature, the notary’s signature, the position of both these signatures and the notary’s stamp appear to be identical on the two documents. In this regard, it is also worth comment that the space at the top of the blank authorization is the same size as the space taken up for Sommer’s name and address.
Nor can there be much doubt but that plaintiff was substantially prejudiced by the improper disclosure. While, concededly, those portions of Dr. Schwenk’s records indicating that plaintiff’s complaints of pelvic pain, on occasion, radiated to her back causing mid and lower back pain and thigh pain are properly discoverable as they speak to a previously existing condition (see, Anderson v Niagara Mohawk Power Corp., 161 AD2d 1141, 1142), the fact that the records contained some relevant information does not mean that no prejudice was occasioned by their disclosure. Indeed, a review of the records, which were submitted to the court for in camera inspection, reveal quite the contrary. It is to be emphasized that these records consist not only of a couple of pages of office notes but rather are an extensive, 200-page compilation of plaintiff’s entire medical history since 1984! Included are portions of hospital records from four separate hospitals, laboratory and x-ray reports, pathology studies and consultation reports from various doctors who, at one time or another, treated plaintiff for any of numerous physical ailments. Put quite frankly, it provides a highly personal look at the reproductive and gynecological history of this young woman and, other than the few *958 pages that recount plaintiffs complaints of back pain, the remainder of the medical records are completely unrelated to the condition at issue. Under these circumstances, the court believes that substantial prejudice has been established as a result of this wholesale disclosure of what essentially are volumes of irrelevant material.
Moreover, notwithstanding defense counsel’s arguments to the contrary, it is now clear that plaintiffs commencement of the instant action does not result in defendant automatically being entitled to these documents. Undoubtedly, medical records are privileged documents and, unless that privilege is waived by the patient, the documents are unavailable (see, CPLR 4504, 3101 [b]). While one way the privilege can be waived is through the commencement of a personal injury action, the waiver occasioned by such action is not a wholesale waiver of all information about the plaintiffs entire physical and mental conditions but a waiver only of the physical and/ or mental condition that is affirmatively placed in controversy (see, e.g., Cynthia B. v New Rochelle Hosp. Med. Ctr., 60 NY2d 452, 456-457; Wachtman v Trocaire Coll., 143 AD2d 527; Iseman v Delmar Med.-Dental Bldg., 113 AD2d 276, 279). While this waiver has been held to include not only medical records relating to current treatment for the identified injuries, but reports, records and treatment relating to prior complaints and treatment to that same area as well (see, Dibble v Consolidated Rail Corp., 181 AD2d 1040), it does not include information involving unrelated illnesses and treatments (Iseman v Delmar Med.-Dental Bldg., supra, at 279). Based upon the record before it, which does not include any medical testimony connecting the gynecological condition or plaintiffs reproductive history with her back condition, the court is not prepared to say that plaintiff has placed her entire gynecological and reproductive history in issue by commencing an action seeking recovery for back, leg and left arm injuries.
There now remains the issue of an appropriate sanction. In this regard, let there be no doubt but that the court is highly disturbed by defense counsel’s actions here. Not only are they at odds with acceptable discovery practice and procedure but, worse, evidence counsel’s willingness to step outside the realm of acceptable behavior in order to gain a litigational edge. Such behavior cannot and will not be condoned. However, the court is not inclined to adopt the sanctions proposed by plaintiff. Because the misconduct here was the doing of defense counsel, not the defendant himself, the court does not *959 believe that striking the answer is an appropriate remedy for the wrongs that occurred. In addition, considering the stage the proceedings are at, the court is not inclined to disqualify counsel at this point, either. It does seem appropriate and only fair, however, that defendant be precluded from using any of the information contained in the improperly secured records, including the obtaining additional medical records from any physician named in those records and in no other properly discoverable document and from submitting into evidence any information about the prior complaints of back pain alluded to therein (see, Matter of Weinberg, 129 AD2d 126, lv dismissed sub nom. Matter of Beiny, 71 NY2d 994; Wilk v Muth, 136 Misc 2d 476; see also, Amado v Estrich, 182 AD2d 1109, 1110). While, concededly, the information about plaintiffs prior complaints of back pain would have been otherwise discoverable, to permit it to be used simply because of that fact would be the virtual equivalent of sanctioning the means by which it was acquired. This the court will not do.
Finally, while admittedly novel, the court believes that the particular facts of this case warrant an additional sanction in order to achieve a complete remedy, namely, the imposition of a fine in the amount of $1,000 payable by defense counsel directly to plaintiff. This conclusion is based upon the realization that plaintiff not only lost a litigational edge as a result of defense counsel’s actions but also lost a good deal of her privacy. While the former loss can be remedied by suppression, the latter loss, unfortunately, cannot. In an effort to right that wrong and to discourage conduct of this sort in the future, the court firmly believes that such an award is an appropriate and necessary exercise of its discretion. In making its decision in this regard, the court was not unmindful of the mitigating circumstances advanced by defense counsel, namely its fervent appeal that any inappropriate conduct occurred at the hands of their paralegal as opposed to their professional staff. Unfortunately, however, as counsel undoubtedly is aware, they are responsible for insuring appropriate direction and supervision of their nonprofessional and paraprofessional staff. Accordingly, they must bear the ultimate responsibility for any improper conduct that their lack of supervision may have caused or enabled.
Plaintiffs motion pursuant to CPLR 3103 (c) is granted and plaintiff is awarded sanctions as outlined above; defendant’s cross motion to compel discovery is denied.