SAMPSON FIRE SALES, INC., Dennis
Sampson and Louise Sampson,
Plaintiffs,

v.

Jerrell OAKS, North American Fire Equip-
ment Co., and North Alabama Fire
Equipment Co., Defendants.

Civ.A. No. 4:99–1208.

United States District Court,
M.D. Pennsylvania.

July 5, 2001.

Richard Dey Manning, Wilkes–Barre, PA, for plaintiffs.

Michael E. Brier, Brier & Brier, Clarks Summit, PA, for defendants.

### MEMORANDUM AND ORDER

MANNION, United States Magistrate Judge.

This is a breach of contract matter as well as other claims brought in a complaint filed on July 9, 1999. (Doc. No. 1). The defendants answered and filed a counterclaim on August 3, 1999. (Doc. No. 6). This was followed by plaintiffs' motion to dismiss the counterclaim, on August 20, 1999. (Doc. No. 7) On September 30, 1999, the matter was referred, following consent of the parties, to a United States Magistrate Judge. (Doc. No. 14). Taking up the motion to dismiss the defendants' counterclaim, United States Magistrate Judge Raymond Durkin dismissed the counterclaim on January 28, 2000. (Doc. No. 16).

According to a case management order, the parties were to attend a final pretrial conference at the Max Rosenn United States Courthouse, Courtroom No. 1 on June 29, 2000, at 1:30 P.M. (Doc. No. 15, ¶ 5). Plaintiffs' counsel failed to appear and thereafter on that same date, the court issued a order to show cause why the matter should not be dismissed for lack of prosecution. (Doc. No. 17). Following the issuance of the order to show cause, plaintiff's counsel filed his response on July 7, 2000, in which he advised the court that because of a mistake in his office calendaring system, as well as other matters, he had overlooked the pretrial conference scheduled for June 29, 2000. (Doc. No. 19).

Thereafter, defendants' counsel filed his "Reply to Plaintiffs' Response to Order of June 29, 2000, and Request for Continuance of Trial". (Doc. No. 20). In this reply, defense counsel argued that the court should dismiss the action for lack of prosecution and impose sanctions in the form of reasonable expenses and attorney's fees payable to defendants' counsel for his attendance at the pretrial conference that plaintiffs' counsel failed to attend. As part of that response, defense counsel attached, as Exhibit A, a copy of a fax cover sheet and one page letter that plaintiffs' counsel apparently meant to send to his own client, but in fact sent to the defendant.[1] When the defendant's employees received the fax, they turned it over to defense counsel.

The letter itself contained general references that one could interpret as showing plaintiffs' counsel was having a difficult time getting information from his client. Defendants' counsel attached this exhibit in an attempt to show that counsel's failure to appear at the pretrial conference was not a result of an administrative mistake, but rather because of dilatory actions on behalf of his client which he argued should result in dismissal for lack of prosecution.

Thereafter, on July 18, 2000, plaintiffs' counsel filed his own motion in which he requested: (1) the court strike and immediately seal defendants' reply; (2) strike defendants' answer; (3) sanction defense counsel for violating the attorney-client privilege; and (4) any additional and further relief that may be just. (Doc. No. 21).

On July 20, 2000, defendants' counsel filed his reply to the plaintiffs' motion for sanctions and stay of the proceedings. (Doc. No. 24). Thereafter, on July 26, 2000, the plaintiffs filed a responsive memorandum to the defendants' reply (Doc. No. 25) and the following day, July 27, 2000, the defendants filed a "Sur Reply". (Doc. No. 26). In a continuation of this war of words, on July 31, 2000, defense counsel filed an affidavit in support of his position (Doc. No. 27) and, on

---

1. When plaintiff sold his business to defendant, the facility and equipment formerly owned by the plaintiff, including the business telephone and fax number, were now used by the defendant as successor owners. It appears that plaintiffs' counsel inadvertently sent correspondence to this fax number, incorrectly believing that his client was still in possession of this fax number in Williamsport, Pennsylvania, when in fact, said fax number now forwarded all communications to defendant's company in Alabama.

August 1, 2000, plaintiffs' counsel filed two (2) affidavits in support of his position. (Doc. Nos. 28 and 29).

In short, what remains before the court is the following:

Defendants' motion for:

(1) Dismissal due to lack of prosecution; and

(2) Sanctions in the form of reasonable attorney's fees and expenses related to his appearance at the June 29, 2000 final pretrial conference in which plaintiffs' counsel failed to appear;

The plaintiffs' motion to:

(1) Strike and seal the "defendants' reply to plaintiffs' response to the order of June 29, 2000, and request for continuance of trial";

(2) Strike the defendants' answer;

(3) Sanction defense counsel for violation of the attorney-client privilege; and,

(4) Request to stay all proceedings.

## DEFENDANT'S MOTION TO DISMISS FOR LACK OF PROSECUTION

By order dated October 26, 1999, the Honorable Raymond J. Durkin, United States Magistrate Judge, set forth dates and deadlines for various activities in order to properly manage this case through its litigation period. (Doc. No. 15). Included in that case management order in Paragraph 5 was the following:

**FINAL PRETRIAL CONFERENCE. The final pretrial conference shall be held on Thursday, June 29, 2000 at 1:30 P.M. in Courtroom No. 1, Max Rosenn United States Courthouse, 197 South Main Street, Wilkes–Barre, Pennsylvania.**

That paragraph was followed by Paragraph 6 which stated:

**TRIAL. The jury trial of this case is hereby set on Tuesday, August 8, 2000 at 9:30 A.M. in Courtroom No. 1, Max Rosenn United States Courthouse, 197 South Main Street, Wilkes–Barre, Pennsylvania.**

This order is file-stamped October 27, 1999, indicating that the parties would have been advised of the above mentioned dates approximately eight (8) months in advance of this final pretrial conference.

Rule 16 of the Federal Rules of Civil Procedure sets forth both the objectives and requirements of pretrial conferences. These can be summarized as having the intention to improve the quality of justice rendered in federal courts by sharpening the preparation and presentation of cases which tends to eliminate trial surprise and improve as well as facilitate the settlement process. See *6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,* Federal Practice and Procedure: Civil § 1522 (1971).

The original Rule 16 did not contain a sanction provision. Despite the fact that sanctions were not specifically included in Rule 16 prior to 1983, courts imposed appropriate sanctions against individuals or parties who violated the requirements of the Rule. Courts were known to rely on Rule 41(b) or their inherent power to regulate litigation by imposing what they considered to be appropriate sanctions. Among those sanctions has been the court's dismissal, under Rule 41(b), for the failure of a plaintiffs' attorney to appear at the pretrial conference. See *Link v. Wabash R. Co.,* 370 U.S. 626, 633, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)[2] (Supreme Court upheld dismissal by the district court where plaintiff's attorney failed to appear at a pretrial conference).

In 1983 an amendment to Rule 16, designed to bring it in line with the needs of modern litigation, added sanction provision 16(f). The provision generally laid out the sanctions which may be imposed against an offending party. The Rule incorporated the provisions of Rule 37(b)(2), more specifically enumerating the sanctions a court may impose in a pending action. Among those sanctions, and pertinent to the issue before the court here, is Rule 37(b)(2)(c) which gives the court the option of "... dismissing the action

---

**2.** Interestingly, the Supreme Court cited to various local Rules of the District Courts that authorized the sanction of dismissal, "acting on their own initiative", including former M.D.Pa.Rule 21. *Link, Id.* at 632, FN. 7, 82 S.Ct. 1386.

or proceeding or any part thereof, . . ." if that sanction is found by the court to be a just punishment for failure to obey the court's order. Similarly, our local rules authorize dismissal, default and preclusion, . . for "failure of counsel for any party to appear before the court at any . . . final pretrial conference." This failure ". . . may be considered an abandonment or failure to prosecute." MDPa.L.R. 83.3(a).

Understanding the availability of dismissal as a sanction, our Circuit has repeatedly warned that "dismissal is a drastic sanction and should be reserved for those cases where there is a clear record of delay or contumacious conduct by the plaintiff." *Donnelly v. Johns–Manville Sales Corp.*, 677 F.2d 339, 342 (3d Cir.1982). Likewise, the Supreme Court in *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) regarded dismissal as a "extreme sanction" requiring "flagrant bad faith" on the part of the plaintiffs as well as "callous disregard" by their counsel of their responsibilities.

■ The Third Circuit in *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863, 868 (3d Cir.1984) set forth an analysis to guide the trial courts in balancing the activities of counsel against the sanction of dismissal. Specifically, the court stated that among the considerations that should be included are: (1) the extent of the parties personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and responding to discovery; (3) the history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. *Poulis, Id.* at 869. We will review these considerations, *seriatum:*

1. ***The Extent of the Parties' Personal Responsibility.***

■ Defendant argues that the content of the intercepted fax, from plaintiffs' attorney to his client, clearly displays a lack of cooperation by the plaintiff with his counsel and this ultimately precipitated the failure of counsel to appear at the final pretrial conference. On the other hand, plaintiffs' counsel has stated in his response to the show cause order that the failure to appear was his and his alone based upon a mistake in his calendaring system. He goes on to detail the additional cases he was working on at the time which add support to the court's conclusion that this was an honest mistake for which the fault would lie with counsel and not his clients. While the intercepted correspondence does reveal some frustration by plaintiffs' counsel with his client because of failure to gather requested information, it hardly strikes the Court as extraordinary, so as to require dismissal.

2. ***Prejudice to the adversary.***

While there is undoubtedly some prejudice to the defendant in preparing for a pretrial conference and trial that did not take place, nowhere in the defendants' responses do they allege, in any way, that the failure to appear by the plaintiff has or will result in the inability of them to call witnesses on their behalf, result in the loss or destruction of documentation of importance or realistically effect the presentation of their case at trial. This is not to excuse counsel for causing the inconvenience to his adversary, however, the court would be hardpressed to find that the defendant has been prejudiced in a manner that should result in dismissal of this case as the appropriate way to serve the best interest of justice.

3. ***History of Dilatoriness.***

Except for normal disagreements as to dates and times, the court does not see any indication in this matter of a history of dilatoriness that requires the imposition of sanctions.

4. ***Whether the Attorney's Conduct was Willful or in Bad Faith.***

The Court finds nothing in the record to suggest that counsel's failure to properly calendar this date, or a mistake in calendaring this date, was willful or in bad faith. In his response to the show cause order, the plaintiffs' counsel has taken full responsibility, "In

summary, the fault for my failure to attend the pre-trial conference and to file the pre-trial memorandum lies solely with me, and not my clients." (Doc. No. 19, p. 4). Plaintiffs' counsel also attached, *in camera,* a detailed summary of his medical problems.[3] It appears that the best characterization of plaintiffs' counsel's failure to appear is excusable neglect as opposed to any deliberate, willful or bad faith conduct. This would not support the sanction of dismissal.

### 5. *Alternative Sanctions.*

If sanctions were to be imposed, the draconian sanction of dismissal does not appear to the court to be appropriate. The court has the option of imposing on plaintiffs' counsel costs, including attorneys' fees, travel and attendance fees, as well as fines related to his failure to appear at the pretrial conference. Therefore the court has ample alternatives to dismissal in this case. (See *Poulis, Id.* at 869; See also Fed.R.Civ.P. 16(f) incorporating the sanction in Rule 37(b)(2)(B), (C), (D) and 28 U.S.C. § 1927.)

### 6. *Meritoriousness of Claim*

The court is not required to use a summary judgment standard, however, this Circuit has held that a claim or defense will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense. See *Poulis v. State Farm & Casualty Co.,* 747 F.2d at 869. (Citing *United States v. $55,518.05 in U.S. Currency,* 728 F.2d at 195; *Feliciano v. Reliant Tooling Co.,* 691 F.2d at 657; *Farnese v. Bagnasco,* 687 F.2d at 764). At trial, if the plaintiff establishes the facts he alleges in his complaint, it cannot be said those facts could not support a claim for relief.

For the reasons stated, the court does not believe that the sanction of dismissal for failure to prosecute would be in the interest of justice. The defendants' motion for dismissal as a sanction for plaintiffs' attorney's

failure to appear at the pretrial conference is **DENIED.**

### DEFENDANTS' MOTION FOR ATTORNEY'S FEES AND EXPENSES

■ Local Rule 83.3.1(b) allows for imposition of costs on attorneys if counsel "acts in a dilatory manner ... fails to comply with any ... order of court, and the judge finds that the sanctions in subsection 83.3.1(a) ... are inadequate."

However, defendants' counsel has not submitted any documentation, calculations or receipts indicating the cost of his appearance in Wilkes–Barre at the pretrial conference not attended by plaintiffs' attorney. It should be noted that defendants' counsel's office is at 114 North Abington Road, Clarks Summit, Pennsylvania, which is approximately thirty (30) miles from the Wilkes–Barre courthouse. Although the court is not aware of the actual travel time or length of stay in Wilkes–Barre prior to his return to Clarks Summit, it is not unusual for attorneys in the Scranton/Wilkes–Barre area to appear regularly in courts in either city. The area colloquially is referred to as "Northeastern Pennsylvania" and most counsel consider themselves regional counsel with respect to appearances in either one or both of the two cities. In this regard, and in light of the court's finding that plaintiffs' counsel's failure to appear was not willful, dilatory, or in bad faith, it does not appear that the imposition of sanctions would serve any particular interest of justice. *See* L.R. 83.3.1(a).

Additionally, calculating mileage at the IRS rate of 32.5 cents per mile would result in a travel allowance of approximately $19.50. While counsel's time is certainly valuable, it does not appear that sanctions in the form of attorney's fees and costs need be imposed to impress the importance of future adherence to court dates on behalf of the plaintiffs' attorney, nor does it appear that the defense attorney expended such vast sums in order to appear at the conference that he will

---

**3.** The court, without objection from the defendant, has kept this document sealed as it contains personal information concerning plaintiffs' counsel. However, the court should note that

having accepted the plaintiffs' explanation of miscalendaring the pretrial conference date, it did not rely on the information contained in this *in camera* exhibit.

suffer economically as a result of the plaintiffs' counsel's neglectful activities. Finally, the court does not find plaintiffs' counsel has so multiplied the proceedings unreasonably or vexatiously as to violate the provisions of 28 U.S.C. § 1927.

For the reasons stated above, the defendants' motion for attorney's fees and costs will be denied, however, it may be renewed if plaintiffs' attorney fails to comply with any future orders of the court. Under those circumstances, the court could interpret the failure to comply a "pattern of dilatoriness", requiring sanctions, as discussed in *Poulis, Id* at 868.

## PLAINTIFFS' MOTION TO STRIKE AND SEAL DEFENDANTS' REPLY, STRIKE DEFENDANTS' ANSWER, AND FOR SANCTIONS

As previously noted, the defendants' attorney attached as "Exhibit A" to his July 13, 2000, reply brief, a copy of a fax transmission from the law office of Richard dey Manning and an accompanying one page faxed correspondence. (Doc. No. 20). On July 18th, the plaintiffs' attorney filed the above-mentioned motion as well as a brief in support alleging "the knowing, grievous, blatant and disgraceful violations by the defendants and (their attorneys) of the plaintiffs' attorney-client privileged relationship regarding the communication annexed to the reply." (Doc. No. 22, p. 1). The plaintiff went on to allege that

"the actions complained of are:

(1) the receiving by the defendants of the clearly marked privileged communications specifically directed to plaintiff, Dennis Sampson and the retention of same;

(2) the failure of defendants to return the same to, or even to notify plaintiffs' counsel;

(3) the receipt by (defendants' attorney) of said communication from defendants and the failure to return the communication, or to notify plaintiffs' counsel; and

(4) the use of the communication by (defendants' attorney) in the reply filed in this court."

(Doc. No. 22, p. 2).

Plaintiffs' counsel supports his claim with the fact that the faxed cover sheet, in the form of a letterhead, stated the document was a "Faxed Transmission From Law Offices of Richard dey Manning". (Doc. No. 22, Exhibit A). The fax cover sheet further identifies the intended recipient of the fax as "Denny Sampson". Below, in smaller, but legible print, is the following general warning:

This facsimile has been sent from a law firm and may contain confidential and privileged information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or lawful agent responsible for delivery of this message to the recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by collect telephone call, and return the original message to us at the above address by the U.S. Postal Service. Thank you.

The attorney-client privilege is one of the oldest recognized privileges for confidential communications. *Swidler & Berlin v. United States*, 524 U.S. 399, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998) (Citing *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *Hunt v. Blackburn*, 128 U.S. 464, 9 S.Ct. 125, 32 L.Ed. 488 (1888)). The privilege is intended to encourage "full and frank communication between attorneys and their clients and therefore promote broader public interest in the observance of law and the administration of justice." *Upjohn*, supra at 389, 101 S.Ct. 677. The systematic benefits of the privilege are commonly understood to outweigh the harm caused by excluding critical evidence. A privilege, however, should operate only where "necessary to achieve its purpose." *Swidler & Berlin*, supra, at 412, 118 S.Ct. 2081 (citing *Fisher v. United States*, 425 U.S.

391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)). Any invocation of the attorney/client privilege should not go unexamined "when it is shown that the interest of the administration of justice can only be frustrated by its exercise." *Swidler & Berlin, supra,* at 412, 118 S.Ct. 2081 (citing *Cohen v. Jenkintown Cab Co.,* 238 Pa.Super. 456, 464, 357 A.2d 689, 693–694 (1976). In contrast, the United States Supreme Court has stated "inasmuch as testimonial exclusionary rules and privileges contravene the fundamental principle that the public has the right to every man's evidence, any such privilege must be strictly construed." *University of Pennsylvania v. EEOC,* 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990) (citing *Trammel v. United States,* 445 U.S. 40, 50, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980)), (quoting *United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950)).

With these general principles in mind, there appear to be three (3) specific approaches to Attorney–Client Privilege (and inadvertent disclosure of that attorney-client privilege). These three approaches are nicely discussed in a 1997 Capital University Law Review.[4] They are: Waiver, Non–Waiver and Case–By–Case.

The plaintiffs' attorney essentially espouses the "Non–Waiver" approach. He argues that the attorney-client privilege is sacrosanct and is not eviscerated, in any form in this case, by the inadvertent transmission via facsimile, to the defendants' place of business. In support he claims:

> ... that plaintiff and his counsel did not know that NAFECO had a Pennsylvania office is clearly set forth in the complaint:
>
> > (44). Early in April 1999, Oakes telephoned Dennis on a Saturday and said that he and Martyn Hills were coming up to Pennsylvania to pick up all of the inventory and office equipment and were going to move the operation to the Decator, Alabama office, and Oakes said he wasn't paying any more money for anything.

> > They arrived and took all of the inventory, which included NAFECO's inventory and the balance of Sampson, Inc.'s inventory, which had not been paid for, approximately $5,000.00 value, for which no payment was ever made.

Therefore, plaintiffs' counsel argues his neglect was excusable and inadvertent because defendants' conduct in taking over Sampson's fax number as part of the acquisition of the business was not known to counsel.

In further support of his argument, plaintiffs' counsel cites a number of cases in which various courts have dismissed actions based upon an adversary's violation of the attorney-client privilege. The court has reviewed these cases and finds them to be clearly distinguishable from our facts. Generally, the cited cases do not involve *inadvertent disclosure* by a party, but rather the intentional, willful or fraudulent acquisition of privileged information.

Plaintiff, for example, cites *Perna v. Electronic Data Systems Corp.,* 916 F.Supp. 388 (D.N.J.1995) for the proposition that a court may dismiss a complaint when a party wrongfully obtains information in violation of an attorney-client privilege. While plaintiff admits that the court found this to be a "drastic sanction", he correctly argues it is within the court's inherent power. However, *Perna* is significantly different from the facts before this court. In *Perna,* the parties were engaged in document inspection conducted at the plaintiff's office. During a lunch break, defendant's attorneys left three briefcases containing documents described as "work product" containing counsel's mental impressions and strategy for the preparation of the case for trial. The plaintiff, surreptitiously, went into the briefcase, and photocopied these documents, turning them over to his counsel. The court held in dismissing *Perna's* claim, that his activities were "deliberate, willful, and intentional acts ... to gain unauthorized access to his adversary's documents." 916 F.Supp. 388, 403 (D.N.J.1995).

In like manner, the plaintiff cites *Lipin v. Bender,* 597 N.Y.S.2d 340, 193 A.D.2d 424

---

4. *Making a Wrong Turn on the Information Superhighway: Electronic Mail, The Attorney–Client* *Privilege and Inadvertent Disclosure.* 26 Cap. U.L.Rev. 347, 359–363.

(1993) to justify dismissal of a complaint as a sanction for a party's "improperly obtaining and using confidential documents." (Doc. No. 22, p. 6). *Lipin*, however, does not involve an *inadvertent disclosure*, but rather describes the plaintiff's conduct as a "surreptitious removal and use of confidential documents". (Doc. No. 22, Plaintiffs' Memorandum, p. 5). Similarly, *In Matter of Beiny*, 517 N.Y.S.2d 474, 129 A.D.2d 126 (1987) also involves counsel's clandestine obtaining confidential and privileged material.

Finally, in *American Express v. Accu-Weather, Inc.*, 1996 WL 346388 (S.D.N.Y. 1996) plaintiff forwarded a package of documents to the defendants, however, prior to their arrival at the defense attorney's office, the plaintiff's attorneys realized that they had included some confidential attorney/client privileged information. Plaintiffs immediately contacted the defense attorneys. This contact was *prior to* actual receipt of the alleged privilege documents by defendant's attorney. Defense counsel, upon receipt of the package, contacted plaintiff's attorney and told him he was conducting legal research as to whether or not he was required to return the documents to plaintiff's attorney, or forward the documents to the court in order to get a ruling on the question of privilege. It appears that the defendant's attorney determined not to do either, but rather opened the package and examined the documents, which the court found violated ABA Ethics Opinion 92–368. The court, in *American Express*, thereafter authored an opinion discussing the ethical violation and identified counsel in the body of the opinion. The court went on to state: "This Opinion constitutes an appropriate sanction." (i.e. The court published an opinion and identified the offending lawyers. This acted as the sanction for their "ethical violation". The court did not dismiss the case.)

None of the cases cited by the plaintiffs' attorney appropriately fit the facts of the case before the court. There has been no indication that the defendants' attorney took any deliberate, intentional or willful action to surreptitiously or otherwise gain control of privileged information from the plaintiffs' attorney. To the contrary, the plaintiffs' attorney inadvertently faxed the communication to a telephone number that was no longer controlled by his client, but rather his adversary. In this regard, although the activity may be excusable neglect, it was still neglect. The responsibility of knowing your client's facsimile number, especially if you wish to transmit confidential attorney-client privileged information, can only rest with the sending attorney.

The defendants, on the other hand, essentially take the "Waiver" approach. They claim that the inadvertent disclosure by the plaintiffs' counsel was a waiver of the attorney-client privilege. They argue that the plaintiffs' intent to maintain the privilege is irrelevant if the person (in the instant case, plaintiffs' counsel) fails to take affirmative steps and institute reasonable precautions to ensure confidentiality. Defendant cites *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.*, 116 F.R.D. 46 (M.D.N.C.1987) (Doc. No. 24, p. 3) to support this position. Defendants go on to state that the client must bear full responsibility for the acts of his attorney in disclosing, inadvertently or otherwise, confidential information. In this regard, the defendant argues that disclosure equal waiver, and therefore entitles the defendant to full adversarial use of the materials.

■ The third approach in the Capital University Law Review, is the "Case–By-Case" approach. (26 Cap.U.L.Rev. 347, 361–363). This is the approach that the court deems advisable and practical in this very unsettled area of the law. In this regard, the court will review the facts, circumstances and law as they relate to this particular case, these parties and the particular privileged information that was inadvertently disclosed.

The Pennsylvania Bar Association Committee on Legal Ethics and Legal Responsibility recently issued Report No. 2000–200 titled "Inadvertent Disclosures". The purpose of the report was to highlight the ethical principles involved, summarize the views of several courts and ethics committees in light of the fact that "the Committee believes that no specific rule of the Pennsylvania Rules of Professional Conduct deals expressly with inadvertent transmissions and the Commit-

tee has not issued a formal opinion on the issues involved." As noted by the Capital University Law Review, Id. at 358,

> Federal courts do not agree on whether the attorney-client privilege is lost as a result of an inadvertent disclosure. Currently, the answer can be found on a continuum. The traditional rule has been that inadvertent disclosure waives the privilege as effectively as intentional disclosure. Some courts have rejected the traditional rule, while others adhere to it.

The American Bar Association, in ABA Comm. On Ethics and Prof'l Responsibility, Formal Op. 92–368 (1992) attempted to address this area by setting forth the following statement in the first paragraph of that Opinion:

> A lawyer who receives materials that on their face appears to be subject to the attorney-client privilege or otherwise confidential, under circumstances where it is clear they were not intended for the receiving lawyer, should refrain from examining the materials, notify the sending lawyer and abide the instructions of the lawyer who sent them.

While review of this 1992 Formal Opinion by the ABA would appear to clarify, once and for all, the ethical and professional obligations of an attorney who inadvertently receives confidential attorney-client privileged information, six and half years later, the American Bar Association has not yet formalized an addition to the Model Rules that would include these provisions. Since at least 1999, the ABA's *2000 Ethics Commission* has proposed drafts, and revised drafts, of Rule 4.4 which would cover this area. Specifically, in draft proposals of Rule 4.4(b), the Committee had proposed:

> (b) a lawyer who receives a document and knows, before reading the document, it has been inadvertently sent, shall not examine the document, but shall notify the sending person and abide by the instructions of the sending person regarding the return or destruction of the document. A lawyer who receives a document and does not know, before reading the document, that it has been inadvertently sent, but later has reason to believe the document was inadvertently sent, shall notify the sending person and, if requested to do so, shall return the original document.

To date, this proposed rule has not been adopted and included in the ABA Model Rules.

In Pennsylvania, the Pennsylvania Bar Association Committee on Legal Ethics and Professional Responsibility has authored a number of "informal opinions" relating to the issue of inadvertent disclosure. In general, the Pennsylvania Bar Association has remained consistent in its reliance on the formal opinions of the American Bar Association related to this issue and specifically on ABA Comm. On Ethics and Prof'l Responsibility, Formal Op. 92–368 (1992). See for example, Pennsylvania Bar Association Committee on Legal Ethics and Professional Responsibility, Informal Op. 99–150 (May a lawyer open and review a sealed package of documents received by his client from the opposing party that he suspects contains confidential material?); Pennsylvania Bar Association Committee on Legal Ethics and Professional Responsibility, Informal Op. 99–101A (Defendant's attorney received information probably sent by a co-worker or someone with access to the plaintiff's computer system, however, most likely not the plaintiff) and Pennsylvania Bar Association Committee on Legal Ethics and Professional Responsibility, Informal Op. 95–57 (hypothetical involving inadvertent transmission of faxes.) As mentioned above, the Pennsylvania Bar Association Committee on Legal Ethics and Professional Responsibility has generally deferred to the ABA's formal opinions as the appropriate guidance for inadvertent disclosure. However, not all local Bar Associations within Pennsylvania have come to that conclusion. For example, the Philadelphia Bar Association Professional Guidance Committee in Guidance Opinion No. 94–3 comes to a contrary determination. It opines that there is no ethical violation for a lawyer who receives and reviews inadvertently faxed confidential documents from his adversary. Moreover, the Philadelphia Bar Association opines that the Rules of Profes-

sional Conduct do not include any provisions regarding refusal to return a document as a breach of any ethical duty. *See* Philadelphia Bar Association Professional Guidance Committee, Inquiries 91–19 (1991) and 89–13 (1989).

■ Unfortunately, all of this uncertainty has the effect of leaving the entire issue of whether inadvertent disclosure of attorney-client privileged information is or is not an ethical violation, up in the air. In attempting to set some standards by which to review this situation, some courts[5] have looked to the following factors:

1. The reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production;

2. The number of inadvertent disclosures;

3. The extent of the disclosure;

4. Any delay and measures taken to rectify the disclosure; and,

5. Whether the overriding interest of justice would or would not be served by relieving a party of its error.

We will now apply our facts to these standards.

### 1. *Reasonableness of Precautions*

■ The plaintiffs' attorney had included with the fax transmission, a cover sheet, as mentioned above, that cover sheet specifically notified any receiving party that the information contained was "confidential and privileged information intended only for the use of the individual or entity named above."[6] It further gave specific instructions that "if the reader of this message is not the intended recipient or the employee or lawful agent responsible for delivery of this message to

the recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited." Finally, the sender's name, address and telephone number as well as a specific message stating "if there is a problem with reception or if this message has been misdirected, please call us at (570) 822–2141", clearly set forth a method by which a party inadvertently receiving this information would know the importance of the confidentiality.

Despite the explicit instructions on the fax cover sheet, it should be noted that the ABA's Ethics 2000 Committee, in the proposed comment to Amended Rule 4.4(b) stated:

> **"the use of general warnings on fax cover sheets advising that the information is intended only for the use of the individual named on the cover sheet may not be sufficient to put a receiving lawyer on notice that the fax was inadvertently sent. Nevertheless, in circumstances where the lawyer actually knows that the document was actually inadvertently sent, the lawyer is prohibited from reading the document and must notify the sending person and abide by that person's instructions. To do otherwise, would significantly undermine the confidential relationship between opposing parties and their lawyers."[7]**

### 2. *Number of Inadvertent Disclosures*

The second factor that the court must consider is the number of inadvertent disclosures. In this case, there is only one inadvertent disclosure totaling only one page. (Doc. No. 20, Exh. A). Because of the limited nature of the disclosure, a heavier burden rests with the plaintiff to insure that he is

5. See example *United States v. Keystone Sanitation Company, Inc.*, 885 F.Supp. 672 (M.D.Pa. 1994) (citing *Advanced Medical, Inc. v. Arden Medical Systems, Inc.*, 1988 WL 76128 (E.D.Pa. 1988)) (collecting cases).

6. In this case the recipient was further identified as the plaintiff, Denny Sampson.

7. As mentioned Rule 4.4(b) has not, as of this date, been adopted. The court, however, finds that in this case, considering the limited content of the attachment to the facsimile cover sheet,

that the admonitions concerning confidentiality were adequate precautions taken by plaintiffs' attorney. On the other hand, it's a stretch for the court to find, as reasonable, the plaintiffs' failure to verify his client's present facsimile number in advance of sending him a confidential communication. This is especially true, as is here, when the substance of the case at issue involves the plaintiffs' allegations that *all* of the assets of his company have been wrongfully taken over by the opposing party.

sending his confidential facsimile transmission to the appropriate party. This is not a case where thousands of documents are sent of which a few inadvertent confidential copies were attached as in *Bank of Brussels Lambert v. Credit Lyonnais*, 160 F.R.D. 437, 446 (S.D.N.Y.1995). There was only one page of communication attached to that facsimile, and to that extent it is incumbent upon the plaintiffs' counsel to know what he is sending and to whom he is sending it. Because the number of documents involved is small, this factor does not weigh in favor of the plaintiff.

### 3. Extent of Disclosure

The disclosure itself does indicate the urgency of plaintiffs' attorney in requesting that his client address a number of issues prior to an upcoming deposition. The failure to do so, according to plaintiffs' counsel, will find his case in a "real mess"[8]. There are further particular instructions as to information that the plaintiffs' attorney wishes his client to gather and questions concerning the names of witnesses who may testify during the course of the upcoming deposition or later at trial. In this regard, since these are inquiries by counsel, but no answers are supplied from his client, the disclosure itself is somewhat benign, albeit one could argue it reveals some of the strategy the plaintiff wishes to employ. For example, in one reference, the plaintiff refers to getting "... the evidence of the worth of (his client's) business 'in the back door' on that deposition". (Doc. No. 20, Exh. A). While the court does not find the information contained in the inadvertently disclosed document to be pivotal to plaintiffs' case, it arguably does identify strategy between the attorney and his client, and therefore does deserve protection as a privileged communication.

### 4. Any Delay in Measures Taken to Rectify the Disclosure.

In the present case, the fax transmission was sent on July 2, 2000 at 8:03 A.M. It's clear that the plaintiffs' attorney was not aware that the fax transmission had been redirected from his client's former business to the defendants' present business in Decatur, Alabama. (Doc. No. 22, p. 3). In this regard while the inadvertent disclosure was made on July 2nd, it did not come to plaintiffs' attorney's attention until the document itself was included in the July 13, 2000 reply brief by the defendant. (Doc. No. 20). Once the July 13th document was received by plaintiffs' counsel, his response, motion and brief in support were filed with the court on July 18, 2000. (Doc. Nos. 21 and 22). It appears clear that as soon as plaintiffs' counsel was aware of the inadvertent disclosure, he addressed the issue with the court and in this regard was diligent in attempting to rectify the inadvertent disclosure that he had made.

By its very nature, an *inadvertent disclosure* means that the party is unaware that they have sent the privileged communication to an adversary or someone who would not be entitled to review it. If the adversary does not notify his opponent of the inadvertent disclosure, it becomes even more unlikely that he will be aware of it. In this case, once the notification occurred, (i.e. used as an attachment to the defendants' reply brief) (Doc. No. 20), plaintiffs' counsel immediately identified his error and took appropriate steps to attempt to rectify that matter. This factor, therefore, weighs favorably for the plaintiff.

### 5. The Interest of Justice

This, to the court, appears to be the most important analysis in this case. There is no statutory, ethical, or professional rules; nor is there black letter law stating the definitive procedure to apply in inadvertent disclosure cases. The court has determined that the case-by-case analysis is truly and presently the best device for the court to make a determination of how the interest of justice can best be served. This is with respect to the individual parties of this case and as guidance to the legal community as a whole if these circumstances arise in the future.

After weighing the cases from both sides, using the analysis set forth by Chief Judge Rambo in *USA v. Keystone Sanitation Company, supra,* and due to the unfortunate and

---

8. Doc. No. 20, Exh. A, which has been sealed by the court.

continued lack of clarity by the courts, the American Bar Association, the Pennsylvania Bar Association and Local Bar Associations with respect to the appropriate manner to handle inadvertent disclosure, this court believes that the best procedure is that which has been set out by the American Bar Association in ABA Comm. On Ethics and Prof'l Responsibility, Formal Op. 92–368 (1992).

There can be no question that confidentiality is a fundamental aspect of the attorney-client privilege which allows for full, free and frank exchange between a lawyer and his client. *Swidler & Berlin v. United States,* 524 U.S. 399, 405, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998). Without the attorney-client privilege, litigants might withhold information from their attorneys in the concern that negative information detrimental to their case could be used against them as a result of that disclosure. Additionally, since the client is the one who has lived the case, his input is vital to his lawyers' determination of the appropriate strategy throughout discovery, pretrial and trial. This sense of ethics, morality and duty are embedded in the Code of Professional Conduct which has been adopted by the court in the Middle District of Pennsylvania. Specifically, Code of Professional Conduct No. 2 (Local Rules of Middle District of Pennsylvania, Appendix C) states:

> **I will treat with civility and respect the lawyers, clients, opposing parties, the court and all the officials with whom I work. Professional courtesy is compatible with vigorous advocacy and zealous representation. Even though, antagonism may be expected by my client, it is not part of my duty to my client.**

ABA Comm. On Ethics and Prof'l Responsibility, Formal Op. 92–368 (1992), in this court's opinion, heightens the level of civility and respect among lawyers, and establishes a professional courtesy which is compatible with vigorous advocacy and zealous representation. In this regard, information that is clearly identified as confidential in nature or appears on its face to be subject to the attorney-client privilege under circumstances that make it clear it was not intended for the receiving lawyer, should not be examined. The receiving lawyer should immediately notify the sending lawyer and abide by his instructions with respect to inadvertently disclosed privileged material.

In this case, because of the uncertainty in the law and complete lack of clarity from competing authorities, it is understandable how the defendants' lawyer could legitimately feel that the plaintiffs' attorney had waived his right to the attorney-client privilege by his own negligent transmission of the document. In order to equitably, civilly and professionally address the circumstances, the court will direct the following:

1. The plaintiffs' motion to order "the immediate sealing of the undated Defendants' Reply to Plaintiffs' Response to the Order of June 29, 2000" (Doc. No. 21) is **GRANTED** in part and **DENIED** in part. Exhibit A, attached to Document Number 20, is ordered to be sealed and the contents of that document may not be used directly, or indirectly, in any further deposition and/or trial of this case. The remainder of Document Number 20 will remain unsealed;

2. The plaintiffs' motion to strike the answer of the defendant (Doc. No. 21) is **DENIED** as the court does not believe that the present state of the law, nor the activities of the defendants or counsel in this case were knowingly unethical or in violation of any rule of professional responsibility. Further, the court does not believe that such a drastic sanction is appropriate considering the circumstances of the present case;

3. The plaintiffs' request to sanction the defendants' counsel and the members of his firm (Doc. No. 21) is **DENIED** for the reasons stated above;

4. Finally, the plaintiffs' request for a stay, (Doc. No. 21) is **DENIED;**

5. The defendant will be directed to return the original and any copies of the facsimile sheet and attached correspondence identified as Exhibit A to their reply brief (Doc. No. 20) within ten (10) days of the date of this Order. The defendant will also be required to certify that they have returned and/or destroyed all copies and that neither their firm, nor their client, nor anyone else

that they are aware of, has a remaining copy of that document;

6. The defendants' motion for dismissal due to lack of prosecution (Doc. No. 20) is **DENIED;**

7. The defendants' motion for sanctions in the form of reasonable attorney's fees and costs related to their appearance at the June 29, 2000 final pretrial conference (Doc. No. 20) is **DENIED;**

8. By separate order the court will schedule a status conference with counsel to set an expedited final pretrial conference and trial date.