■ JOAN C. LIPIN, Appellant, v ROBERT M. BENDER, JR., et al., Respondents. [597 NYS2d 340] —Orders, Supreme Court, New York County (Karla Moskowitz, J.), entered January 27, 1992, which dismissed the complaint as a sanction for plaintiff's improperly obtaining and using confidential documents and

returned such documents to defendants' counsel, unanimously affirmed, without costs.

This is seemingly a matter of first impression, the issue being whether, under the unique circumstances presented, dismissal of the complaint is an appropriate sanction for plaintiff's surreptitious removal and use of confidential documents constituting privileged material and defense counsel's attorney's work product.

The underlying facts are not in dispute. Plaintiff, a former high ranking employee of defendant American Red Cross in Greater New York (NYRC), brought this action for sexual harassment and discrimination pursuant to New York's Human Rights Law and 42 USC §§ 1983 and 1985.

On June 28, 1991, the parties appeared before Special Referee Birnbaum in a hearing room on the second floor of the New York County Courthouse at 60 Centre Street to argue certain discovery matters. Plaintiff, who since her termination by NYRC had been working as a paralegal for her attorney in this matter, found immediately in front of her at her "customary" location at the counsel table, a stack of documents of some 200 pages. It is unclear why and by whom the documents were placed in that precise location and not otherwise safeguarded, but counsel for defendants were sitting directly across the 12 by 6 foot counsel table.

Typed on the top page of the stack of documents was the heading:

"Weil, Gotshal & Manges MEMORANDUM

Two Files From Lawrence J. Baer

Re: *Joan Lipin* v *American Red Cross"*

The documents contained a series of internal memoranda prepared by counsel containing notes of various interviews with defendant Bender and other individuals employed or associated with NYRC concerning this action. The documents also included digests of depositions which had previously been taken in this action.

As counsel were engaged in argument concerning certain discovery matters, plaintiff slipped these documents off the table, placed them on her lap, and began to read them.

As plaintiff read through the documents, she recognized that they were interviews with various witnesses relevant to this action. According to the hearing testimony, "I decided that I was going to obtain possession of these papers for my own protection." When argument before the Special Referee

had ended, plaintiff informed her attorney that she had just read various inflammatory statements taken in interviews concerning her, and that she was "horrified". Counsel stated that he would not read the documents until he had obtained a "second opinion". During the luncheon recess, plaintiff went to counsel's office and copied the documents.

Counsel examined the documents on Sunday, June 30, 1991. According to him, the documents contained inflammatory references to plaintiff, as well as evidence of a "conspiracy to ruin her career." After conferring with the attorney who had originally referred the matter to him, both attorneys formed the opinion that they were entitled to retain the documents under a claim of right, and that any claim of confidentiality had been waived in view of the circumstances of the discovery of the documents—that they had been left unsecured, directly in front of the plaintiff, in a public area, such that plaintiff had been "invited" to read the documents.

Thereupon, plaintiff's counsel requested that opposing counsel attend a "settlement" conference at his offices at 2:00 P.M. on Tuesday, July 2, 1991. At that time, plaintiff's counsel made various demands, including (1) that Weil, Gotshal & Manges withdraw as counsel based upon a conflict of interest in representing both defendants Bender and NYRC, (2) a monetary settlement, and (3) "suitable action" to withdraw, with an apology for false information allegedly disseminated concerning plaintiff. In response to these demands, defense counsel demanded return of the documents and an explanation as to the manner in which plaintiff had obtained them. Plaintiff's counsel refused to reveal how the documents had been obtained, and also refused to return the copies which had been made, asserting that in any event he had no control over his client, who could conceivably give the documents to the mass media.

Defendants immediately sought, by order to show cause, an order pursuant to CPLR 3103 suppressing the privileged documents, disqualifying plaintiff's attorney, and imposing sanctions. Pending a hearing, the IAS Court directed that no use be made of the documents and that any and all copies made of the documents be secured.

An evidentiary hearing was held, at which plaintiff revealed the manner in which she had removed the documents. Plaintiff admitted that in her employment as a paralegal, she was aware of the nature of the attorney-client privilege. Plaintiff further revealed that counsel had advised her, on the day the

documents were obtained, that "you can't lie so you have to say yes, you by mistake picked up his documents". The plaintiff insisted, however, that the documents were not taken by mistake, but rather, "it was my own recognizance and my own protection".

Following the hearing, defendants moved to amend their motion to seek dismissal of the complaint, based upon the hearing testimony given by plaintiff.

In a decision read into the record, the court found that the documents were on their face clearly attorney's work product, and that plaintiff, as an employee of her counsel, had an obligation to return those documents to opposing counsel. Instead, copies of the documents were made, for which there was "no justification". The court stated, "I have to conclude that the actions of the plaintiff and her attorney were so egregious in taking this material * * * so heinous that the only remedy, as much as I dislike to do this, is to dismiss the lawsuit."

In *Matter of Beiny* (129 AD2d 126), counsel for petitioner in a trust accounting proceeding clandestinely obtained, by means of an improperly issued subpoena, discovery of confidential and privileged material from the adverse party's former law firm without notifying that party. This Court, in modifying the order of the Surrogate so as to disqualify petitioner's counsel in addition to the previously ordered suppression of the 107 improperly obtained documents, found that the sanction of disqualification, while regrettable, in that it deprived petitioner of his chosen counsel, was necessary

"not only to sanitize the proceeding but to prevent the offending lawyer or firm from deriving any further benefit from information obtained and used in violation of basic ethical precepts and statutory obligations * * *

"[T]o impose a sanction short of disqualification would be to treat the conduct at issue with a degree of lenity practically inviting its recurrence. Our principal concern under the circumstances must be to preserve the integrity of the process by which rights are vindicated." *(Supra,* at 143-144.)

Under the circumstances of this case, although there is not the premeditation found in *Beiny (supra,* at 133), plaintiff's initial conduct is equally or even more egregious in terms of an appropriate sanction inasmuch as it was plaintiff herself who seized the opportunity presented to obtain an unfair advantage over her adversaries in this litigation. Her improper conduct was then compounded by counsel, who could

have readily returned the documents or sought further direction from the court, rather than permitting his client to return to his office and make copies of the disputed documents and then sought to take advantage of such improper conduct by scheduling a "settlement conference."

Although plaintiff's contention that CPLR 3103 does not authorize a court to dismiss a complaint for discovery abuses has some facial appeal, as noted by Professor Siegel in his Practice Commentaries to the section, the factual variations that arise from case to case are limitless and a detailed listing of all possible abuses and remedies would be impractical and unwise. "If, for any reason sufficient to invoke that undefinable commodity known as judicial 'discretion', an adjustment in the use of disclosure is called for by the facts of any case, CPLR 3103 is at hand to confer the discretion." (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3103:1, at 356.)

Thus, although the statute does not list dismissal as a remedy for a discovery abuse, it does not purport to set forth an exhaustive list of remedies, leaving the court the wide discretion to make "an appropriate order" to prevent the abuse of disclosure devices, including but not limited to suppression of information improperly obtained.

Under the unique circumstances presented, particularly the sort of willful misbehavior engaged in by plaintiff and her attorney, we conclude that the IAS Court did not improvidently exercise its discretion in invoking the drastic sanction of dismissal of the complaint.

We have considered plaintiff's other points and find them without merit.

Her attempt to portray the defendants as having engaged in dilatory and sharp practices appears to have but one purpose —to obscure the issue of her own misconduct. Moreover, there is no support for her claim that defendants waived any attorney-client privilege and, regardless of whether the documents were privileged, the highly improper manner in which they were obtained, combined with their subsequent use by plaintiff's counsel to defendants' detriment, constitutes a sufficient basis for the court's action (see, Matter of Beiny, supra, at 136). "[I]t is not unduly harsh to expect and indeed to require that civil litigants gather the information needed to prosecute or defend their actions in conformity with the applicable CPLR provisions." (Supra, at 137.) Concur—Sullivan, J. P., Rosenberger, Kupferman and Asch, JJ.