**Joan Carol LIPIN, Plaintiff,**

**v.**

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Lawrence J. Baer, Mark A. Jacoby Christopher A. Parlo, Steven R. Wall American National Red Cross Arthur W. Greig, in his individual and official capacity, Defendants.**

**No. 00 CIV 3457 LTS DFE.**

United States District Court, S.D. New York.

March 28, 2002.

Joan Carol Lipin[1], New York City, Plaintiff Pro Se.

Wisehart & Koch by Arthur M. Wisehart, New York City, Former Attorney for Plaintiff.

1. *See infra* note 2.

Eliot Spitzer, Attorney General of the State, of New York, Department of Law by Carol Cairns Olson, Assistant Attorney General, New York, for Defendant Greig.

Morgan, Lewis & Bockius LLP by Kevin T. Rover, Melinda E. Hoffmann, New York City, for Defendants Parlo and Wall.

Ohrenstein & Brown, LLP by Geoffrey W. Heineman, New York City, for Defendant National Union Fire Insurance Company.

· Weil, Gotshal & Manges by. Kevin P. Hughes, New York City, for Defendants National Red Cross, Baer and Jacoby.

## OPINION

SWAIN, District Judge.

Joan Carol Lipin ("Plaintiff") brings this .action ("*Lipin IV*") against National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), Lawrence J. Baer ("Baer"), Mark A. Jacoby ("Jacoby"), Christopher A. Parlo ("Parlo"), Steven R. Wall ("Wall"), the American National Red Cross (the "National Red Cross"), and Arthur W. Greig ("Greig"), in his individual and official capacity (collectively, "Defendants"), asserting causes of action pursuant to 42 U.S.C. section 1985(2) for defamation, injurious falsehood, and obstruction of justice, civil rights causes of action pursuant to 42 U.S.C. sections 1983, 1985, 1986 and 1988, and a claim for retaliation allegedly violative of the New York City Human Rights Law.

All defendants have moved to dismiss Plaintiff's amended complaint. Defendants Baer, Parlo and the National Red Cross have in addition moved for sanctions and other relief, including injunctive relief barring Plaintiff and her former counsel[2]

2. According to the amended complaint, in or about April 1996, the Departmental Disciplinary Committee of the New York State

from pursuing new litigation arising from the events that are the subject matter of the instant case. Plaintiff has interposed her own motion for injunctive relief.

The Court has considered thoroughly all submissions and arguments related to these motions, and the decision here rendered reflects such consideration. For the following reasons, Defendants' motions are granted and Plaintiff's action is dismissed with prejudice as to all defendants. Because Defendants' motions are dispositive of Plaintiff's claims, the Court need not address Plaintiff's motion for injunctive relief.

## BACKGROUND

The following background facts are undisputed and/or matters of public record. In February 1988, Plaintiff's employment as Manager of Health Services for the National Red Cross was terminated. Thereafter, Plaintiff commenced an action in state court against the National Red Cross, the American Red Cross of Greater New York, and her former supervisor, Robert Bender, Jr. Plaintiff alleged sexual harassment, discrimination, wrongful termination, civil rights violations, conspiracy, conspiratorial cover-up, defamation, blacklisting, breach of contract, and intentional infliction of emotional distress. The state

court dismissed that action, which was captioned *Lipin v. Robert M. Bender, Jr., The American National Red Cross and American Red Cross in Greater New York* ("*Lipin I*"), pursuant to New York Civil Practice Law and Rules ("CPLR") section 3103(c) as a sanction following certain "heinous" and "egregious" actions by Plaintiff and her attorney, Arthur M. Wisehart ("Wisehart"). The sanctioned conduct included taking and photocopying certain privileged documents belonging to the defendants in that action. Both the Appellate Division of the New York State Supreme Court and the New York State Court of Appeals affirmed the dismissal of *Lipin v. Bender*, 193 A.D.2d 424, 428, 597 N.Y.S.2d 340 (1st Dep't 1993); *Lipin v. Bender*, 84 N.Y.2d 562, 572, 620 N.Y.S.2d 744, 644 N.E.2d 1300 (N.Y.1994).

In June 1992, while her appeal from the dismissal of *Lipin I* was pending, Plaintiff commenced *Lipin II* in the United States District Court for the Southern District of New York, asserting the claims previously raised in *Lipin I*, and an additional claim that defendants had engaged in a conspiracy to entrap Plaintiff into taking the privileged documents and committing other litigation-related misconduct. Plaintiff made express references in her complaint to in-

---

Supreme Court, Appellate Division, First Department ("DDC") initiated grievance proceedings pursuant to New York Judiciary Law section 90(6) against Plaintiff's attorney and then-employer, Arthur M. Wisehart, arising from Wisehart's alleged involvement in discovery abuses in Plaintiff's initial state court action. *See e.g.,* Am. Compl. ¶ 36(h). Disciplinary charges were filed and referred to a Hearing Panel. Defendant Greig was appointed to chair the Panel that presided over Wisehart's hearing. On March 14, 2000, the DDC issued its "Hearing Panel Sanctions Report," recommending that Wisehart be disciplined for his involvement in the discovery abuse. Am. Compl. ¶ 36(h).

Wisehart was subsequently suspended, on March 8, 2001, from the practice of law in the State of New York for a period of two years and has also been removed from the roll of attorneys entitled to practice before this Court. *See In the Matter of Arthur M. Wisehart*, 281 A.D.2d 23, 721 N.Y.S.2d 356, 363 (1st Dep't 2001), *appeal dismissed, leave to appeal denied,* 96 N.Y.2d 935, 733 N.Y.S.2d 370, 759 N.E.2d 369 (N.Y.2001); *In the Matter of Arthur M. Wisehart*, (JSR), M–2–238 (S.D.N.Y. May 18, 2001). Lipin, who was represented by Wisehart at the commencement of this action and throughout the briefing of the instant motions, entered her *pro se* appearance in this action on or about September 28, 2001.

formation in the privileged documents that she had been prohibited from using. The District Court entered an order sealing the complaint and staying further proceedings in *Lipin II.*

In March 1993, Plaintiff commenced *Lipin III,* again in this District, again asserting the same claims. The District Court granted defendants' motion to dismiss *Lipin II* and *Lipin III* on the ground of claim preclusion, holding that the disposition of *Lipin I* barred further litigation of the underlying claims. *Lipin v. American National Red Cross,* Nos. 93 Civ. 1334, 92 Civ. 4455(LBS), 1996 WL 18901 (S.D.N.Y. Jan. 17, 1996), *aff'd,* 104 F.3d 355 (2d Cir.1996), *opinion vacated and superseded on reh'g,* 113 F.3d 1229 (2d Cir.1997). Applying New York's claim preclusion law, the District Court examined each of Plaintiff's claims and found that they were all transactionally related to the claims in the state action and were therefore precluded. It found that Plaintiff's claims alleging sexual discrimination, sexual harassment, and wrongful termination had already been dismissed by the state court with prejudice. The claims of defamation and blacklisting were held identical to those dismissed in *Lipin I.* Her claim for intentional infliction of emotional distress was held precluded as an alternative theory of relief arising from the allegations pled in *Lipin I.* Finally, Plaintiff's breach of contract and quantum meruit/unjust enrichment claims were found to be based on nearly identical allegations in *Lipin I,* and were also held precluded by the earlier dismissal of that action. *Lipin,* 1996 WL 18901, at *7–8. The Second Circuit affirmed the dismissal of *Lipin II* and *Lipin III,* finding Plaintiff's arguments without merit. *Lipin v. American National Red Cross,* 113 F.3d 1229 (2d Cir.1997).

*Lipin IV,* the matter now before the Court, is another attempt to assert the claims raised and dismissed in *Lipin I, Lipin II,* and *Lipin III.* In addition to reiterating the allegations of sexual harassment and discrimination in connection with her employment by the National Red Cross, Plaintiff asserts a number of purported conspiracy and civil rights claims that are all premised on the notion that the evidence on which the state court based its misconduct findings in *Lipin I* was fraudulent. Plaintiff alleges that Defendants conspired to defame her, to obstruct justice, and to deprive her of her constitutional rights by, among other things, referring to the *Lipin I* misconduct findings in later litigation papers and in a report in connection with a disciplinary proceeding later commenced with respect to Wisehart, her attorney.[3] Plaintiff also contends that Defendants conspired to retaliate against her because of her commencement of *Lipin I.*

In Plaintiff's First Claim for Relief, she alleges that she is the victim of a conspiracy, arising out of her claims of sexual harassment and claims of litigation misconduct, to defame her. Plaintiff alleges that defendants Parlo and Wall, who are attorneys with Morgan, Lewis & Bockius LLP, the firm that represented the American National Red Cross in *Lipin I,* defamed Plaintiff by including in memoranda filed in an unrelated federal court case and arbitration proceeding statements that describe the findings of misconduct by Plaintiff and her attorney in *Lipin I.* Plaintiff alleges that defendants Parlo and Wall conspired with defendants National Red Cross and its attorneys Jacoby and Baer to publish the allegedly defamatory statements as a continuation of a conspiracy of litigation misconduct arising out of *Lipin I.* (Am.Compl.¶¶ 40(i), 49, 50, 54, 55.)

---

**3.** *See supra* note 2.

Plaintiff's Second Claim for Relief alleges a conspiracy to obstruct justice and deprive Plaintiff of her constitutional rights, and also arises out of the publication of statements reporting the misconduct of Plaintiff and her attorney, Wisehart. The allegedly offending statements were made in a report, dated March 14, 2000, that was apparently prepared by defendant Greig in his capacity as Chair of the state court disciplinary committee "that has been investigating the disciplinary matter of plaintiff's attorney and who [sic] has threatened certain imminent action in connection therewith." (Am. Compl.¶ 36(h)). As in her First Claim for Relief, Plaintiff seeks to relitigate her underlying claims of sexual harassment and a continuing conspiracy of litigation misconduct arising out of *Lipin I.* (Am. Compl.¶¶ 36, 62, 64–75, 77, 80–85, 139, 140, 143–146).

Plaintiff's Third Claim for Relief alleges that Defendants conspired to retaliate against her because of her filing of *Lipin I* by defending that action and by seeking dismissal of *Lipin I* on account of the misconduct committed by Plaintiff and her attorney in that action. (Am. Compl.¶¶ 148–149). Plaintiff's Third Claim for Relief repeats the retaliatory misconduct claims that were dismissed by the state and federal courts in *Lipin I, Lipin II* and *Lipin III.*

## DISCUSSION

Defendants move to dismiss Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff's claims are barred by collateral estoppel and/or res judicata, by virtue of the prior decisions. Defendants further contend that the complaint should be dismissed for failure to state a claim for defamation and conspiracy. Defendant Greig asserts that the Court lacks subject matter jurisdiction of Plaintiff's claims, citing the *Rooker–Feldman* doctrine, and that dismissal pursuant to Rule 12(b)(1) is appropriate. Defendant Greig also claims the protection of absolute judicial immunity in connection with Plaintiff's claims arising from his disciplinary committee activities.

### Rule 12(b)(1)

When defendants move for dismissal on a number of grounds, the court should "'consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined.'" *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d Cir.1990) (quoting 5 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1350, at 548 (1969)).

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure when the district court lacks the statutory or constitutional power to adjudicate it. *See Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). A plaintiff asserting subject matter jurisdiction generally has the burden, once challenged, of proving by a preponderance of the evidence that jurisdiction exists. *See id.* Unlike a motion to dismiss under Rule 12(b)(6), a motion to dismiss for lack of subject matter jurisdiction is not directed to the claim's merits. *See Exchange Nat'l Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126, 1130–1 (2d Cir.1976).

#### Rooker–Feldman

The *Rooker–Feldman* doctrine is based on the "strictly original" subject matter jurisdiction of the federal district courts, which precludes them from sitting as appellate tribunals to review state court

judgments, as well as from considering issues which are "inextricably intertwined" with such judgments or claims seeking relief that, if granted, would modify state court decisions. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482–84 and n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The *Rooker–Feldman* doctrine is a judicially-created doctrine of abstention based on principles of comity. The doctrine precludes federal district court jurisdiction where the suit is in fact a collateral attack on a final state court judgment. District courts thus "do not have jurisdiction ... over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *Feldman,* 460 U.S. at 486, 103 S.Ct. 1303. The only permissible avenues for such review are the relevant state superior courts and/or the United States Supreme Court. *Id.* at 482–84, 103 S.Ct. 1303. Moreover, 28 U.S.C. section 1738 requires the federal courts to give preclusive effect to state judgments. 28 U.S.C.A. § 1738 (West 2002).

■ The *Rooker–Feldman* doctrine applies where the state court judgment arises from a proceeding that was "judicial in character," and the federal action would require the district court to decide questions that were already decided by the state court or that are "closely intertwined" with an already-decided question. *Feldman,* 460 U.S. at 482–84, n. 16, 103 S.Ct. 1303. Here, it is undisputed that Plaintiff's original state court lawsuit—*Lipin I*—was a judicial proceeding. The state court decisions in that action have already resolved the principal issue that Plaintiff seeks to relitigate here—finding that she "surreptious[ly] remov[ed] ... confidential documents constituting privileged material and defense counsel's attor-

ney's work product." *Lipin v. Bender,* 193 A.D.2d at 425, 597 N.Y.S.2d 340.

■ Wisehart's disciplinary proceeding, also, is "judicial"in character, because his suspension from the practice of law is a final judgment of a state court in a judicial proceeding. *Polur v. Murphy,* No. 94 Civ. 2467(JSM), 1995 WL 232730, at *4 (S.D.N.Y. April 19, 1995). The Appellate Division's "conduct of disciplinary proceedings with respect to those admitted to practice before it amounts to a judicial inquiry," *Erdmann v. Stevens,* 458 F.2d 1205, 1208 (2d Cir.), *cert. denied,* 409 U.S. 889, 93 S.Ct. 126, 34 L.Ed.2d 147 (1972); *see Polur,* 1995 WL 232730, at *4, and it is a well-established principle that the *Rooker–Feldman* doctrine applies to reviews of New York State's disciplinary proceedings against attorneys, *see Zimmerman v. Grievance Committee,* 726 F.2d 85, 86 (2d Cir.), *cert. denied,* 467 U.S. 1227, 104 S.Ct. 2681, 81 L.Ed.2d 876 (1984); *Sassower v. Mangano,* 927 F.Supp. 113, 119 (S.D.N.Y. 1996). Plaintiff's claims challenging the suspension order, specifically as alleged in Plaintiff's Second Claim for Relief, are therefore dismissed for lack of subject matter jurisdiction.

■ Indeed, Plaintiff's First, Second and Third Claims for Relief clearly implicate the results of the prior judicial proceedings. The causes of action relating to the privileged document incident (including those asserting that citation or repetition of the state court findings constitutes tortious or unconstitutional conduct furthering vast conspiracies targeted toward Plaintiff) depends entirely on the view that the evidence found credible by the state courts was in fact false. To accept Plaintiff's premise would necessarily be to revisit state court determinations and, indeed, to declare them wrongly decided. This the *Rooker–Feldman* doctrine prohibits. The causes of action seeking relief in connec-

tion with Plaintiff's former employment relationship with the National Red Cross could be entertained only if this Court rejected the state court with-prejudice dismissal of Plaintiff's sexual harassment and related claims. That course is likewise foreclosed to this Court.

Plaintiff's Claims for Relief present issues that are "inextricably intertwined" with the state court's conclusions that, because Plaintiff engaged in improper conduct, her employment discrimination action should be dismissed. Plaintiff's claims thus present a direct challenge to state judicial proceedings. Pursuant to Rule 12(b)(1), Plaintiff's First, Second and Third Claims for Relief are dismissed to the extent those claims are inconsistent with the state court's findings in connection with the privileged document incident or with the with-prejudice dismissal of Plaintiff's *Lipin I* claims. Because a federal court is required to dismiss claims of which it lacks subject matter jurisdiction regardless of whether the parties against whom such claims are asserted argue lack of subject matter jurisdiction,[4] the First, Second and Third Claims for Relief are dismissed as against all Defendants to that extent.

### 11th Amendment

 Plaintiff's claims for damages against defendant Greig in his official capacity are also barred by the Eleventh Amendment to the United States Constitution, which precludes suits in federal court against a state or its agency where, as here, there is no waiver or consent to federal court jurisdiction. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900; 79 L.Ed.2d 67 (1984); *Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38–40 (2d Cir. 1977). Eleventh Amendment immunity

applies to bar damage actions against state officials sued in their official capacities if the state is the real party in interest. *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir.1988). The Departmental Disciplinary Committee ("DDC") chaired by defendant Greig is a part of the Appellate Division, First Department (*see* N.Y. Judiciary Law § 90(2) and 22 NYCRR Part 605), which is immune from suit for damages in federal court. *See Richards v. State of New York,* 597 F.Supp. 692, 693 (E.D.N.Y.1984), *aff'd,* 767 F.2d 908 (2d Cir.1985), *cert. denied,* 474 U.S. 1066, 106 S.Ct. 820, 88 L.Ed.2d 793 (1986). Here, Plaintiff's action against defendant Greig is based on actions taken in his official capacity as Panel Chairman of the DDC. The Eleventh Amendment therefore bars Plaintiff's claim against defendant Greig in his official capacity.

### *Absolute Immunity for Actions Taken in Quasi–Judicial Capacity*

 Defendant Greig is also immune from suit for damages in his individual capacity with respect to his activities as Panel Chairman of the DDC. Under the doctrine of quasi-judicial immunity, state officials have absolute immunity from suit when the claims against them arise from duties and actions that are "functionally comparable" to the duties and actions of judges. *See Oliva v. Heller,* 839 F.2d 37, 39–40 (2d Cir.1988) (absolute immunity for federal judge's law clerk). Absolute quasi-judicial immunity has been upheld for referees and committees appointed by state courts to conduct attorney disciplinary hearings. *Sassower v. Mangano,* 927 F.Supp. at 120; *see also Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 433–34, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). State bar disciplinary proceedings have been found to be "clearly judicial in nature;"

---

4. Federal Rule of Civil Procedure 12(b)(1).

quasi-judicial immunity is thus available to members of disciplinary committees and panels. *Sassower*, 927 F.Supp. at 120–21.

■ As Panel Chair of the DDC, defendant Greig is immune from liability to Plaintiff for damages arising from actions taken in his panel capacity. Challenges to the Panel Report may, and should, be addressed by the Appellate Division. Plaintiff's remaining claims against defendant Greig are thus barred by absolute quasi-judicial immunity.

*Rule 12(b)(6)*

Defendants' motions are also granted to the extent they are brought pursuant to Rule 12(b)(6). In deciding a motion to dismiss under 12(b)(6) for failure to state a claim upon which relief may be granted, a court must accept as true the material facts alleged in the complaint and draw all reasonable inferences in plaintiff's favor. *Grandon v. Merrill Lynch*, 147 F.3d 184, 188 (2d Cir.1998). The court must not dismiss the action unless " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir.1994) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir.2000). Because it is clear, for the reasons detailed below, that Plaintiff can prove no set of facts in support of her claim that would entitle her to relief, Defendants' motion is granted.

*Collateral Estoppel and Res Judicata*

The Court may, and here does, take judicial notice of the prior court decisions in respect of Plaintiff's claims. Fed.

R.Evid. 201 (West 2002). Consideration of such prior decisions in connection with the adjudication of the instant motion does not constitute treatment of the motions as one for summary judgment. *See Ansonia Tenants' Coalition, Inc. v. Ansonia Assoc.*, 163 F.R.D. 468, 470 (S.D.N.Y.1995) and cases cited therein.

■ Defendants assert that Plaintiff's sexual harassment, defamation and other employment-related claims are precluded by the decisions rendered in *Lipin I*, *Lipin II* and *Lipin III* and must therefore be dismissed. Under the doctrine of claim preclusion (also known as res judicata), " '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.' " *Saud v. Bank of New York*, 929 F.2d 916, 918–19 (2d Cir.1991) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)).[5]

■ A federal court "is precluded from hearing a claim that could have been but was not raised in a state court proceeding, if the courts of that state would be precluded from hearing that claim." *Collard v. Incorporated Village of Flower Hill*, 759 F.2d 205, 207 (2d Cir.) (per curiam), *cert. denied*, 474 U.S. 827, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985). New York State has adopted a transactional analysis approach to deciding res judicata issues. *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (N.Y.1981). "[O]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy."

---

**5.** *See also* 28 U.S.C. § 1738, which provides, in relevant part, that the records of state judicial proceedings "shall have the same full faith and credit in every court within the United States … as they have by law or usage in the courts of such State … from which they are taken." 28 U.S.C.A. § 1738 (West 2002).

*Id.* The judgment is conclusive even if the transactions "are based on different theories, seek different remedies, or allege different facts." *Lipin*, 1997 WL 279912, at *5. Whether a "factual grouping" comprises a "transaction" or a "series of transactions" for this purpose "depends on how 'the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Smith v. Russell Sage College*, 54 N.Y.2d 185, 445 N.Y.S.2d 68, 71, 429 N.E.2d 746 (1981) (*citing* Restatement (Second) of Judgments [Tent. Draft No. 1] § 61). Furthermore, dismissal of an action for failure to state a claim under Rule 12(b)(6), as a final federal judgment on the merits, "precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398–99, n. 3, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981).

 Here, Plaintiff's state court proceedings in *Lipin I* provided her with a full and fair opportunity to be heard, including the opportunity for her to present her version of her involvement in the removal of the opposing counsel's documents and her contentions on the issue of whether the documents were entitled to protection as privileged. Moreover, the claims made in the subsequent federal actions, *Lipin II* and *Lipin III*, originated from the same series of transactions—Plaintiff's alleged unlawful treatment at the New York Red Cross; the termination of her employment there; and an alleged continuing retaliatory conspiracy to cover-up the matter, defame her and ruin her reputation, originating prior to her termination and continuing throughout all of the ensuing litigation, including in connection with the discovery incident. The claims in *Li-pin II* and *Lipin III* were dismissed pursuant to Rule 12(b)(6), precluding further relitigation of issues that arise from those claims. As Judge Sand noted in *Lipin III*:

> [P]laintiff's own characterization of defendants' conduct suggests, that the obstruction of justice claim is merely part and parcel of one elaborate conspiracy theory, in which defendants allegedly colluded (1) to protect sexual harassers and preserve a practice of sex discrimination; (2) to devise retaliatory strategies by which to terminate, defame, and blacklist plaintiff; (3) to entrap plaintiff by planting documents in front of her .... Thus, plaintiff's allegations of evidentiary destruction and obfuscation are but factual elaborations of an overall retaliatory conspiracy theory, which was raised in *Lipin I*.

*Lipin v. American National Red Cross*, 1996 WL 18901, at *5. As to Plaintiff's claims for defamation and blacklisting, Judge Sand concluded that those too were "elements of her overarching retaliatory conspiracy theory [and were] nearly identical to the defamation and blacklisting claims asserted in state court" and therefore were precluded. *Id.* 1996 WL 18901, at *7.

Plaintiff's First Claim for Relief asserts that the conspiracy, her claims as to which were asserted and dismissed with prejudice in the prior court proceedings, is continuing and has resulted in the publication of alleged defamatory statements. Plaintiff's Second Claim for Relief asserts that the conspiracy alleged in the prior court proceedings is continuing and has resulted in the publication of defamatory statements in state disciplinary proceedings against Wisehart. Plaintiff's Third Claim for Relief rehashes the retaliatory conspiracy theory asserted and dismissed in the prior proceedings. Plaintiff's claims against Defendants are based on the same

facts or transactions alleged in prior court proceedings and, thus, are not open to relitigation in this action.

*Failure to State Defamation Claim*

The only cause of action that Plaintiff makes in *Lipin IV* that is arguably not precluded under collateral estoppel is the defamation claim against defendants Parlo and Wall, alleged primarily in Plaintiff's First Claim for Relief. It, too, fails to state claim upon which relief may be granted. The claim against defendants Parlo and Wall targets their statement in a memorandum of law submitted in another case that was being handled by Plaintiff's attorney, Wisehart, *Polin v. Kellwood Co.*,[6] that Plaintiff "stole" the privileged documents referred to in the excerpts from the opinions in the prior proceedings. *See* Am. Compl. ¶ 38; *Polin,* 103 F.Supp.2d at 251, n. 17.

In *Polin,* Wisehart represented the plaintiff and defendants Parlo and Wall represented Kellwood. Plaintiff had worked on the *Polin* matter as a paralegal for Wisehart's practice. The memorandum of law containing the allegedly defamatory statement was filed by defendants Parlo and Wall in support of Kellwood's motion to confirm an arbitration award which had ordered Wisehart to pay, as a sanction, a sum that represented one-half of Kellwood's fees and expenses incurred during the arbitration. The panel had based its decision to impose the sanction on what it held was proof that Wisehart had

1) falsely accused Kellwood and its counsel of interfering with witnesses testimony, of maintaining false financial documents, and of destroying evidence; 2) improperly transcribed a telephone

conference with [one of the arbitrators] and Kellwood's counsel without telling either party; 3) unduly prolonged the hearings by a constant repetition of questions, a reiteration of the same areas of inquiry, and by continuously interposing spurious objections; 4) pursued a frivolous age discrimination claim; and 5) committed a contempt of the panel by sending a letter to the [American Arbitration Association] before the proceedings had terminated containing false and unsubstantiated statements about [an arbitrator].

*Polin,* 103 F.Supp.2d at 249. The *Polin* Court "flatly rejected" Plaintiff's and Wisehart's "defamatorily-described claims" against defendants Parlo and Wall. *Id.* at 255.

■ Under New York law, "in the context of a legal proceeding, statements by parties and their attorneys are absolutely privileged if, by any view, or under any circumstances, they are pertinent to the litigation." *O'Brien v. Alexander,* 898 F.Supp. 162, 171 (S.D.N.Y.1995). The concept of pertinent material is "extremely broad" and "embraces anything that may possibly or plausibly be relevant or pertinent, with the barest rationality, divorced from any palpable or pragmatic degree of probability." *Id.* All that is required for a statement to be privileged is a minimal possibility of pertinence. *See Seltzer v. Fields,* 20 A.D.2d 60, 244 N.Y.S.2d 792, 795–96 (1st Dep't 1963), *aff'd,* 14 N.Y.2d 624, 249 N.Y.S.2d 174, 198 N.E.2d 368 (1964). The rule rests upon the notion that parties "should be able to 'speak with the free and open mind which the administration of justice demands' without the constant fear of libel suits." *Mosesson v.*

---

6. The Court takes judicial notice of the Opinion and Order of Judge Owen in *Polin v. Kellwood Co.,* 103 F.Supp.2d 238 (S.D.N.Y.2000), as it is a related action and

specifically referenced in Plaintiff's complaint. *See* Am. Compl. ¶¶ 32–34, 38, 43–48 and 51–52.

*Jacob D. Fuchsberg Law Firm,* 257 A.D.2d 381, 683 N.Y.S.2d 88, 89 (1st Dep't 1999) (citation omitted).

 During the course of the *Polin* litigation, Wisehart engaged in acts of misconduct which included an unauthorized recording of a telephone conversation with defendant Wall and an arbitrator, *Polin,* 103 F.Supp.2d at 243 n. 5, making false representations to the arbitration panel regarding the substance of additional witnesses' testimony, *id.* at 249, and, after the arbitration panel had awarded the defendant damages as a sanction against Wisehart, submitting to the court as "dissents" unauthorized internal memoranda from the arbitrators, *id.* at 250. In response, defendants Parlo and Wall submitted to the district court a memorandum arguing that Wisehart, with the assistance of Plaintiff, his paralegal, was trying to create a false picture of events and was engaging in and continuing a pattern and practice of deceiving the court. *Id.* at 251. In so doing, defendants Parlo and Wall called the court's attention to the incidents detailed in past *Lipin* proceedings as evidence of how Wisehart's past unethical conduct would inform his behavior in *Polin. Id.* As noted by Judge Owen in his *Polin* opinion, the past conduct "could be quite relevant to [the] Court's assessment of the panel's conclusions as to Wisehart's intentions behind his conduct during the arbitration . . . where the unanimous panel eventually bluntly sanctioned him for his misconduct." *Id.* at 255.

Because the allegedly defamatory statement was made in the course of a legal proceeding to which it was pertinent, Plaintiff fails to state a claim for defamation as against Parlo and Wall. Thus,

Plaintiff's claims against defendants Parlo and Wall are dismissed.

Plaintiff's First, Second and Third Claims for Relief are therefore dismissed with prejudice in their entirety. The Court need not address Defendants' other arguments or Plaintiff's motion for injunctive relief.

*Motions for Sanctions and Injunctive Relief*

Defendants National Red Cross, Baer and Jacoby move pursuant to Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. Section 1927 for the imposition of sanctions on both Plaintiff and Wisehart, arguing that Plaintiff's claims are a vexatious attempt at continuing prior actions, have been interposed for an improper purpose, and have no basis under settled principles of law. Those defendants further assert that Plaintiff and Wisehart should be enjoined from commencing further lawsuits relating to Plaintiff's employment by the National Red Cross and the conduct of ensuing series of litigations because further litigation is likely to constitute further abuse of the judicial process and harassment of Defendants.

*Rule 11*

Defendants assert that "[P]laintiff and her attorney [Wisehart] should be sanctioned under [R]ule 11(b)(1) and (2) because they signed and filed a complaint containing claims that are clearly barred by claim preclusion and presented for the improper purpose of derailing state disciplinary proceedings being conducted against Mr. Wisehart." Memo. of Law in Supp. of Defs.' Mot. for Sanctions and Other Relief at 10.[7]

Federal Rule of Civil Procedure 11(b) provides, in relevant part:

---

7. At the time the motion was filed, Plaintiff was not proceeding *pro se,* and was still represented by Wisehart.

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; [and]

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law . . . .

Fed.R.Civ.P. 11 (West 2002). Rule 11 contains a 21–day "safe harbor" provision, under which a motion "shall not be filed with or presented to the court" unless the movant first serves its adversary with the proposed motion and gives the adversary a three-week window of opportunity to withdraw or correct the "challenged paper, claim, defense, contention, allegation, or denial." Fed.R.Civ.P. 11(c)(1)(A). In addition, a party must move for sanctions "separately from other motions or requests." *Id.; see Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1328 (2d Cir.1995).

Defendants submitted the sanctions motion separately from all other motions. Defendants' submissions made clear that sanctions were being sought as against both Plaintiff and Wisehart. The record indicates that Defendants served Plaintiff's attorney, Wisehart, with the sanctions motion on May 31, 2000. *See* Aff. of Personal Service, Attached to Memo. of Law in Supp. of Defs. Mot. for Sanctions and Other Relief. The Notice of Motion was filed with the Court on July 14, 2000, more than 21 days after Wisehart was served. None of Plaintiff's pleadings or claims were withdrawn in the intervening period. Wisehart and Plaintiff responded to the Rule 11 motion in a memorandum of law filed with the Court on October 30, 2000, arguing that the motion for sanctions is part of a conspiracy "to complete the destruction of Plaintiff's source of [Plaintiff's] present employment and the ability of her attorney to continue to represent her." *See* Pl.'s Memo. of Law in Opp'n to the Mot. to Dismiss and Their Additional Mot. for Rule 11 Sanctions at 38.

The Second Circuit has construed Rule 11 to mandate that sanctions be imposed under Rule 11(b)(1) when a party has signed a pleading for "an improper purpose such as to delay or needlessly increase the cost of litigation," or under Rule 11(b)(2) when a party presents to the court papers "without a belief formed, from a reasonable inquiry, that the position espoused is factually supportable and is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law." *See Caisse Nationale de Credit Agricole–CNCA, New York Branch v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir.1994). Rule 11 sanctions are appropriate "where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands . . . ." *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226; *see also Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 661 (S.D.N.Y.1996) (sanctions are warranted when there is a "flagrant lack of merit" to a party's claims and the likelihood of an improper motive for the filing of a lawsuit); *Shafii v. British Airways PLC*, 83 F.3d 566, 570 (2d Cir.1996) (citations omitted) (a legal argument under Rule 11 will result in sanctions when " 'it

[is] clear ... that there is no chance of success.' "). In determining whether sanctions are warranted, courts consider "whether the person has engaged in similar conduct in other litigation." Fed. R.Civ.P. 11 Advisory Committee notes (1993 Amendments).

■ A represented party, as Plaintiff was at the inception of this action, may not be sanctioned monetarily for a violation of subdivision (b)(2). *See Salovaara v. Eckert*, 222 F.3d 19, 32 n. 11 (2d Cir.2000) (quoting Fed.R.Civ.P. 11(c)(2)(A)). The Court, however, may sanction a represented party under subdivision (b)(1), if the party " 'had actual knowledge that filing the paper constituted wrongful conduct, e.g., the paper made false statements or was filed for an improper purpose.' " *Id.* at 32 n. 8 (quoting *Calloway v. Marvel Entertainment Group*, 854 F.2d 1452, 1474 (2d Cir.1988), *rev'd on other grounds sub nom. Pavelic & Le Flore v. Marvel Entertainment Group*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989)); *see Storey v. Cello Holdings, LLC*, 182 F.Supp.2d 355, 369 (S.D.N.Y.2002). Improper purposes such as bad faith and an intent to delay and harass can be inferred "when applicable preclusion doctrines ... clearly foreclose further litigation." *Scott v. Major*, No. 89 Civ. 690, 1990 WL 21319, at *1 (S.D.N.Y. March 6, 1990), *aff'd*, 923 F.2d 844 (2d. Cir.1990), *citing McLaughlin v. Bradlee*, 803 F.2d 1197, 1205 (D.C.Cir. 1986) (an intent to harass and delay was apparent where the court had issued a final judgment finding preclusion appropriate, and the plaintiff persisted in filing four insubstantial post-judgment motions).

■ Here, Wisehart could easily have determined the likely success of Plaintiff's claims by examining the case law and considering the fact that many, if not all, of Plaintiff's claims were precluded. He and Plaintiff have attempted in this action to prosecute the same restated, reformulated and transactionally related claims originally decided in *Lipin I, Lipin II*, and *Lipin III*. Based on the prior decisions of the state and federal courts, Wisehart should have been able to determine that Plaintiff's claims were barred by collateral estoppel. *See Kahre–Richardes Family Foundation, Inc. v. Village of Baldwinsville, New York*, 953 F.Supp. 39, 41 (N.D.N.Y.1997), *aff'd*, 141 F.3d 1151 (2d Cir.1998). Wisehart should have known that there was absolutely no possibility of prevailing on the merits given the precedent against the claims and the fact that Plaintiff's claims were reformulated conspiracy theories. *Cohen v. Bane*, 853 F.Supp. 620, 626, 629 (E.D.N.Y.1994) (where plaintiff's claims were mere reformulated conspiracy theories, sanctions are necessary to deter such counsel from wasting the time and resources of the adversaries as well as of the court). Despite repeated dismissals, Plaintiff and Wisehart have continued to file actions based on the same facts and circumstances addressed by this and other courts. Defendants have been forced to litigate another in a series of complaints that had " 'absolutely no chance of success under existing precedents.' " *Shafii*, 83 F.3d at 570 (citation omitted). Plaintiff and Wisehart, in pursuing claims "seeking to contravene the explicit findings of prior litigation without any meritorious arguments to extend the law, went far beyond the standard of objective unreasonableness in filing this action." *Pentagen Technologies International Limited v. United States*, 172 F.Supp.2d 464, 473 (S.D.N.Y. 2001). Sanctions against Wisehart under Rule 11(b)(2) are therefore warranted.

■ Sanctions on both Wisehart and Plaintiff under Rule 11(b)(1) are also warranted, as the filing of the *Lipin IV* complaint and its accompanying papers were asserted for an improper purpose—to ha-

rass and cause unnecessary delay or increase the cost of litigation. *See Storey,* 182 F.Supp.2d at 366. Here, as noted, claim preclusion clearly foreclosed further litigation. Plaintiff was unambiguously informed by the prior decisions that her claims are barred. Despite these warnings, however, and despite the opportunity provided by the safe harbor provision of Rule 11 to re-evaluate her submissions, Plaintiff persisted with her meritless claims. *Id.* Moreover, an apparent a motive for the commencement of the *Lipin IV* action was to delay and disrupt the state disciplinary proceedings against Wisehart. Plaintiff filed her complaint on May 5, 2000, two months after the state court's DDC issued its "Hearing Panel Sanctions Report" recommending that Wisehart be disciplined for his involvement in the discovery abuse. *See supra* note 2. By filing her complaint, Plaintiff sought damages and an injunction compelling the DDC to "withdraw the false and defamatory statements" from the March 14, 2000 Panel Report and enjoining the DDC "from issuing any reports or statements in furtherance of the scheme to defame her." Am. Compl. ¶ 170(a)-(j). On November 3, 2000, Plaintiff, still represented by Wisehart, filed a motion for injunctive relief with regard to the state court proceeding. Plaintiff, now *pro se,* has continued to press the claims asserted in *Lipin IV* and the motion for injunctive relief, urging the Court to reinstate Wisehart.

Thus, Plaintiff and Wisehart violated Rule 11 in filing the complaint and continuing to litigate *Lipin IV.* "A sanction imposed for violation of ... [R]ule [11] shall be limited to what is sufficient to deter repetition of such conduct ... [T]he sanction may consist of, or include, ... an order to pay a penalty into court ...." Fed.R.Civ.P. 11(c)(2). The Court finds that a monetary sanction is necessary and appropriate here, to underscore the seri-

ousness of the violation and to deter repetition of the offending conduct. The Court has considered Mr. Wisehart's suspension from practice and Plaintiff's representations regarding her inability to secure appropriately remunerative employment in determining the monetary sanction to be imposed. Plaintiff and Wisehart will each be directed to pay Defendants National Red Cross, Baer and Jacoby each $1,000 in respect of the attorneys' fees incurred by such defendant in defending this action.

*28 U.S.C. Section 1927*

■ Defendants also assert that Wisehart should be sanctioned pursuant to 28 U.S.C. section 1927, which provides that:

> Any attorney or other person admitted to conduct cases in any court in the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (West 2002). Section 1927 "looks to unreasonable and vexatious multiplications of proceedings." *United States v. International Bhd. of Teamsters,* 948 F.2d 1338, 1345 (2d Cir.1991). The Rule obliges "attorneys throughout the litigation to 'avoid dilatory tactics.'" *Pentagen Technologies,* 172 F.Supp.2d at 473 (citation omitted). The Second Circuit has required a particularized showing of bad faith to justify sanctions under Section 1927. *Oliveri v. Thompson,* 803 F.2d 1265, 1272 (2d Cir.1986). Bad faith may be inferred when the attorney's actions are so meritless as to require the finding that they must have been undertaken for some improper purpose such as delay. *Shafii,* 83 F.3d at 571; *People of Vacco v. Operation Rescue National,* 80 F.3d 64, 72 (2d Cir.1996); *International Bhd. of Team-*

*sters,* 948 F.2d at 1345; *Salovaara,* 222 F.3d at 35.

To the extent Section 1927 sanctions might be appropriate in this case, the Court finds that it is not necessary to impose such sanctions in addition to those the Court has imposed pursuant to Rule 11.

*Injunctive Relief Barring Further Litigation*

Defendants move to enjoin Plaintiff and her attorney from filing further lawsuits. A district court has the authority to enjoin a plaintiff who engages in a pattern of vexatious litigation from continuing to do so. *Fitzgerald v. Field,* No. 99 Civ. 3406(RWS), 1999 WL 1021568, at *5 (S.D.N.Y. Nov. 9, 1999); *see Safir v. United States Lines, Inc.,* 792 F.2d 19, 23 (2d Cir.1986). In determining whether or not to restrict a litigant's future access to the courts, courts in this Circuit consider the following factors:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Safir,* 792 F.2d at 24. In limiting a plaintiff's ability to litigate, courts consider whether any restrictions imposed are, "taken together, not so burdensome as [to] deny the litigant meaningful access to the courts." *Abdullah v. Gatto,* 773 F.2d 487, 488 (2d Cir.1985) (quoting *In Re Green,* 669 F.2d 779, 786 (D.C.Cir.1981)).

Here, a review of the past claims before this Court and the New York State courts reveals clearly that Plaintiff and her attorney "cannot be depended upon to accept the results of motion practice or the dismissal of [their] claims." *Fitzgerald,* 1999 WL 1021568, at *5. This is the fourth complaint filed by Plaintiff asserting essentially the same claims in slightly altered guise. Plaintiff's prior attempts to pursue these claims have been rejected by state and federal courts. She has been represented by Wisehart in each instance; indeed, the amended complaint suggests that Plaintiff and her attorney were acting as co-litigants in *Lipin IV.* (*See e.g.* Am. Compl. ¶¶ 47, 82, 85, 98). Because it is clear that neither can be depended upon to desist from repeated attempts to relitigate previously-rejected claims and each rejection has led to elaboration, of an ever-broadening conspiracy theory, the extraordinary remedy of injunctive relief barring the commencement of further related litigation is appropriate. *See Safir,* 616 F.Supp. at 619; *Fitzgerald,* 1999 WL 1021568, at *5.

Plaintiff and Wisehart will therefore be permanently enjoined from litigating further any claims relating to alleged harassment during, or the termination of, Plaintiff's employment with the National Red Cross, as well as any claims concerning any alleged attempts unlawfully to prevent Plaintiff from litigating such employment-related claims and any claims arising from judicial or disciplinary proceedings relating to Plaintiff's and Wisehart's misappropriation go privileged documents during *Lipin I,* except to seek appellate review of this decision or submit papers responding to applications, if any, by Defendants.

*CONCLUSION*

For the reasons stated above, Defendants' motions are granted and Plaintiff's

action will be dismissed with prejudice. Plaintiff and Wisehart are found to have violated Rule 11, and each is directed to pay each of Defendants National Red Cross, Baer and Jacoby $1,000 in respect of the attorneys' fees incurred by such defendant in defending this action. Plaintiff and Wisehart are permanently enjoined from litigating further any claims relating to alleged harassment during, or the termination of, Plaintiff's employment with the National Red Cross, as well as any claims concerning any alleged attempts unlawfully to prevent Plaintiff from litigating such employment-related claims and any claims arising from judicial or disciplinary proceedings relating to Plaintiff's and Wisehart's misappropriation of privileged documents during *Lipin I,* except to seek appellate review of this decision or submit papers responding to applications, if any, by Defendants.